## William J. Barr v. Marcel and Carolyn Guay

[ 209 A.2d 304 ]

February Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed April 6, 1965

*Ready and Brown* for plaintiff.

*Yandell and Page* for defendants.

**Barney, J.** This is a dispute over the southern boundary of the last lot sold out of a tract of land on the shore of Lake Champlain. The plaintiff owns the part of that lot having the questioned boundary, and the defendants own the adjoining land to the south. It is the purpose of these proceedings to settle the common property line.

Each side contended for a particular boundary line deriving from relevant deeds and based on the testimony of its own surveyor. The trial court, in its findings, rejected the conclusions of both surveyors, and, by its order, etsablished a third line. The defendants acknowledge this boundary to be different than the one they claim, but are willing to accept it. The plaintiff is not. As a result, he attacks the findings as unsupported by the evidence, and the judgment as unsupported by either the findings or the evidence.

The conveyances out of the large tract commenced at its outside boundaries, north and south, and progressed toward a central meeting. This meeting took place in the Barr lot, the last lot sold, whose bound-

ary the plaintiff is trying to establish. Until the conveyances met in the Barr lot, the boundaries of the northern lots were not descriptively related to the boundaries of the southern lots.

The lot of the defendants Guay was the last, or most northerly, of the southern lots conveyed, and its boundaries are oriented only to the previous conveyances to the south of it. The pertinent provisions of the deed from the common grantor, Walker, to the Guays, read:

"A certain lot of land with a building thereon, having a frontage on Lake Champlain of One Hundred Fifty (150) feet. Said lot is bounded on the South by the established boundary of lands owned by one Kropper; on the East by the waters of Lake Champlain; on the West by U. S. Route No. 2; on the North by land owned by the Grantor herein, Leroy S. Walker.

The Eastern boundary of lot extends North One Hundred Fifty (150) feet (lake front) from the established boundary, and the Western boundary extends North One Hundred Fifty (150) feet from the established boundary, (highway frontage). The Northern boundary of lots runs parallel to the established Southern boundary. The description given in the Barr deed is as follows:

A certain lot of land having a frontage on Lake Champlain of one hundred and eighty (180) feet, more or less.

Said lot is bounded on the south by land owned by Marcell and Carolyn Guay; on the north by land owned by one John Stephen and wife; on the west by the highway Route U. S. No. 2, and on the east by the waters of Lake Champlain.

The eastern boundary of the lot extends north one hundred and eighty (180) feet from the established boundary, more or less, and the western boundary extends two hundred (200) feet from the established boundary, more or less (highway frontage). The northern boundary of the lot runs parallel with the established southern boundary.

There is also conveyed to the grantees herein a right-of-way in common with others over the existing road leading from Route U.S. No. 2 to the premises herein conveyed.

The lot of land herein conveyed is the remaining part of a parcel of land conveyed to the grantor herein by Warranty Deed of Eileen Farrell, dated August 17, 1945, and of record in Vol. 15, page 550 of North Hero Land Records after the conveyance of two lots of land by this grantor, one being to Stephen and wife, by Warranty Deed dated June 11, 1956 and or record in Vol. 23, page 227 of North Hero Land Records, and the other being a deed

to Marcel Guay and Carolyn Guay, dated November 4, 1957, and of record in Vol. 23, page 409 of North Hero Land Records."

The finding of the trial court which establishes the boundary line between the plaintiff and the defendants reads as follows:

The north line of Guay is a line parallel with the Cordner woven wire fence, and with the north line of Barr. This line is one hundred fifty (150) feet distant from the iron stake at the top of the bank near the southeast corner of the Guay property. This line forms approximately a ninety (90) degree angle with the highway.

The reference in the finding to the Cordner woven wire fence does not relate to any other finding, but it appears in the evidence that this fence marks the northern boundary of the whole parcel from which the common grantor, Walker, ultimately conveyed the Guay and Barr lots. It is, in fact, the northerly boundary of the Stephen lot, which adjoins the Barr lot on the north.

The Barr conveyance, by its terms, disposed of all of the grantor's land between the Stephen lot and the Guay lot. Since both the Stephen and the Guay deeds preceded in time the Barr deed, their boundaries, not those in the Barr deed, necessarily determined the shape of the remaining lot. In other words, the northerly boundary of the Barr lot is fixed by the southerly boundary of the Stephen lot, and, likewise, the southerly or disputed boundary of the Barr lot is fixed by the location of the northerly boundary of the Guay lot. The courses, distances and dimensional descriptions in the Barr deed must, therefore, yield to the bounds as they already existed. The grantor's power to convey was limited to what he then owned.

So, the resolution of the controversy requires the location on the ground of the northern Guay boundary. The trial court properly addressed its critical finding to this end. But the descriptive data indicating the course of that boundary relates to the Cordner fence line and the shape of the Barr lot. This data derives from deeds that play no part in locating the Guay boundary. They cannot, by themselves, justify its location.

The importance of markings and monuments on the ground cannot be overstated. It is the usual circumstance that such physical evidences of boundary locations protect neighboring property owners from disruption of all nearby lot lines whenever any one of them is called into question. But their controlling impact is weakened if such markings are not set out as monuments by the deed, even though they

may have some evidential effect to establish acquiescence in a particular line. *Haklits* v. *Oldenburg,* 124 Vt. 199, 204, 201 A.2d 690.

The Guay boundary finds its derivation in prior conveyances to the south. If its own bounds are not demonstrably monumented on the ground, the next step is to relate them southward to the nearest relevant marked line, since the courses given in these deeds are imprecise.

One surveyor found such a bound on the line between Guay and Kropper, and located the northern Guay boundary from this. He testified that he found that the Guay-Kropper boundary had been identified by iron pipes set in as markers, and that his positioning of the disputed boundary between Guay and Barr was reinforced by the presence of an iron marker already in position on the shore end. The evidence suggested the possibility that the Guay-Kropper line may have become fixed on the ground by acquiescence.

The other surveyor rejects these markings, although some of them were noted on his survey. He went back to the original bounds of the earlier tract, and found an indication that southern lot lines were intended to be parallel to an early northern conveyance. He then brought all of the southern lot lines along from the first conveyance by measured distances, derived from the deeds, until he reached the Barr lot. This made that lot about thirty-six feet narrower in its north-south dimension than the call of the deed. The angle his lot lines make with the highway is not expressed, but his overall dimensions are tied into a state survey made for highway purposes.

Although the lower court rejected the lines established by either surveyor, the line selected by the court appears to be based on the shore dimension set out by one surveyor and the presumed angular direction of the bound set out by the other. In addition, the court found that the Guay lot was rectangular, with the Guay-Barr bound making approximately a 90° angle with the highway.

For the purpose of fixing this division line and settling the dispute, the line determined by the court must not only be justifiable at law under the evidence, but must also be so definitive that it can be located on the ground with precision.

If the description of the lot as rectilinear and the disputed boundary as making an approximate right angle with the highway are intended as descriptive approximations for purposes of understanding the background situation, they perhaps can be said to have some justification in the evidence. But this support from the evidence is not sufficient to allow their use as exact measures defining the Guay-Barr boundary.

For example, there is no evidence that supports a fixing of the

boundary angle with the highway at precisely 90°, yet, for locating purposes, an imprecise angle is useless. In a boundary of three hundred feet or more, a difference of a few degrees will shift the corner several feet. Uncertainty will plague, and may invalidate, the description. *Spooner* v. *Menard*, 124 Vt. 61, 63, 196 A.2d 510. Without a firm right angle, the lot loses its rectangular characteristic.

The positioning of the boundary on the ground by the findings and judgment order therefore depends upon its character as an exact parallel to the Cordner fence line and the north boundary of the Barr lot. But the primary call of the deeds requires the common line between Barr and Guay to be parrallel to the boundary between Guay and Kropper to the south. To support the judgment, it is essential that the findings, or at least the evidence, firmly establish the existence of an exactly parallel relationship between the Cordner fence line and the Guay-Kropper boundary, either directly, or through their origins, if the disputed line is to be located by reference to the Cordner fence and the Barr north bound. If such a relationship cannot be evidenced, some other descriptive reference of positive effect must be established. This issue requires clear resolution, and has not had it. To accomplish this result, a new hearing is necessary.

*Judgment reversed and cause remanded.*