## Edward R. Eurich, Commissioner of Agriculture v. Coffee-Rich, Inc.

[298 A.2d 846]

No. 96-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, J.J.

Opinion Filed October 17, 1972

Motion for Reargument Denied December 5, 1972

*James M. Jeffords,* Attorney General, and *Martin K. Miller,* Assistant Attorney General, for Plaintiff.

*Paterson, Gibson, Noble & Brownell,* Montpelier, and *Elliott Levitas, Esq.,* of *Arnall, Golden & Gregory,* Atlanta, Ga., for Defendant.

**Daley, J.** This case originated in the Washington County Court of Chancery. The plaintiff, the Commissioner of Agriculture of the State of Vermont, hereinafter referred to as commissioner, sought to enjoin the defendant, Coffee-Rich, Inc., from transacting business within the State of Vermont including sale of or distribution of Rich's Coffee-Rich Non-Dairy Creamer until the defendant obtained an imitation dairy product handler's license.

An imitation dairy product handler's license must be secured and held at the cost of $25.00 per year in order for an imitation dairy products handler to transact business in the state. 6 V.S.A. § 2721(b). An imitation dairy products handler is a person, firm, unincorporated association or corporation engaged in the business of buying, selling, packaging, or processing imitation dairy products for sale within or without the state. 6 V.S.A. § 2672(9). An imitation dairy

product is either a product (1) containing no milk which by its texture, flavor, color, packaging, or other characteristic could be confused by consumers with established and defined dairy products, or (2) sold or offered for sale as a substitute for milk or fluid dairy products. 6 V.S.A. § 2672(8).

The commissioner in his bill of complaint against Coffee-Rich, Inc., alleged that the defendant was selling in the state a product labeled Rich's Coffee-Rich Non-Dairy Creamer. The commissioner further alleged in paragraph five and paragraph six of his complaint that Rich's Coffee-Rich Non-Dairy Creamer (1) ". . . contains no milk and by its texture, flavor, color, packaging and other characteristics could be confused by consumers with cream and so-called 'half-and-half', which are dairy products" and (2) ". . . is sold or offered for sale as a substitute for cream and 'half-and-half', which are fluid dairy products."

The defendant, Coffee-Rich, Inc., admitted in its answer that it was selling Rich's Coffee-Rich Non-Dairy Creamer, but denied specifically those allegations made by the commissioner in paragraphs five and six in his complaint as hereinbefore quoted. The defendant further alleged that the product is a *sui generis* original development and a distinctive product in itself and not an imitation of any dairy product. The defendant further alleged that the product

> ". . . is, in fact, not an imitation cream, imitation half-and-half, imitation milk, imitation dairy product, or imitation of any food product, but is an original and distinctive product and consequently cannot 'be confused by consumers with established and defined dairy products', nor is it 'sold or offered for sale as a substitute for milk or fluid dairy product', but to the contrary, is sold and offered for sale as such original and distinctive product for such use by consumers as they find fit and appropriate."

The defendant, Coffee-Rich, Inc., further alleged in its answer that the statutes which the commissioner was seeking compliance by the defendant violated both the Constitutions of the United States and the State of Vermont.

At pre-trial conference, both parties agreed by oral stipulation to submit the case to the Chancellor on the factual matters asserted by the plaintiff and admitted by the defendant, and also the factual matters as contained in the defendant's answer. Hence, there was no evidence before the Chancellor other than that contained in the pleadings.

The Chancellor found in his findings of fact:

"17. That Coffee-Rich is a *sui generis* product and is not an imitation dairy product, nor could it be confused with established and defined dairy products, since Coffee-Rich is a distinctive product in itself.

18. That Coffee-Rich as marketed and described as found aforesaid is sold or offered for sale as a substitute, or, in other words, as a product that is put in place of something else and is available for use instead of something else for milk or for fluid dairy products."

The Chancellor went on to find that to require the defendant, Coffee-Rich, Inc., to obtain a license to market its product in the state, Rich's Coffee-Rich Non-Dairy Creamer, would violate the Constitutions of the United States and Vermont.

The Chancellor stated in his judgment order that Rich's Coffee-Rich Non-Dairy Creamer was an imitation dairy product as it was offered for sale as a substitute for fluid dairy products, but since it was not constitutionally permissible to require the defendant Coffee-Rich, Inc., to obtain a license for the marketing of its product in the state, the plaintiff's bill of complaint was dismissed with prejudice and plaintiff was enjoined from enforcing the statutory provisions of 6 V.S.A. Chapter 151 against the defendant.

The defendant then brought a motion to alter the judgment order on the grounds that holding Rich's Coffee-Rich Non-Dairy Creamer to be an imitation dairy product was not in accord with finding of fact number 17, *supra,* and the record of the case. The Chancellor amended his judgment order to read:

"That the Defendant, Coffee-Rich, Inc., is an imitation dairy product handler and that Rich's Coffee-Rich Non-

Dairy Creamer, although it is a *sui generis* product and not an 'imitation dairy product' as defined in the first clause of 6 V.S.A. § 2672(8), said product is sold or offered for sale as substitute for milk or fluid dairy products, as defined in the second clause of the Statute above referred to; and hence the Defendant comes within the 'imitation dairy product' definition of 6 V.S.A. § 2672(8)."

The judgment order in all other aspects was not changed.

Both the plaintiff and defendant appeal from the judgment order. The plaintiff finds fault with the holding that 6 V.S.A. Chapter 151 is constitutionally void as applied to the defendant. The defendant finds fault with the holding that Rich's Coffee-Rich Non-Dairy Creamer comes within the statutory definition of "imitation dairy products" in 6 V.S.A. § 2672(8).

■ The duty of this Court is to affirm the findings if there is credible evidence to support them; and in turn construe those findings to support the judgment. *National Grange Mutual* v. *Churchill, et al.*, 126 Vt. 428, 432, 234 A.2d 334 (1967). The evidence before this Court consists of the undenied facts alleged by both the plaintiff and the defendant. *Elliott* v. *Fish and Game Commission*, 117 Vt. 61, 63, 84 A.2d 588 (1951); *Digregorio* v. *Champlain Valley Fruit Co.*, 127 Vt. 562, 564, 255 A.2d 183 (1969).

The primary issue is whether there is evidence to support the final judgment that the defendant's product, Rich's Coffee-Rich Non-Dairy Creamer, falls within the statutory definition of an "imitation dairy product" as stated in 6 V.S.A. § 2672(8), thus imposing the requirements of 6 V.S.A. Chapter 151 on the defendant.

■ When this case was heard in the court of chancery, the Rules of Practice in the Court of Chancery, 12 V.S.A. App. III, were still in effect. Rule 21 provides that ". . . all facts well pleaded in a bill, . . . that are not denied or put in issue by the answer, shall be deemed admitted . . . . " Rule 15 provides that ". . . the defendant may insist in his answer or on any special matter that goes to the merits of the bill,

and have the same benefit thereof as if he had pleaded the same . . . ." Hence, all material allegations made by each party and not denied by the opposing party are facts admitted, and to be considered by the chancellor in reaching a decision.

The parties stipulated that the case was to be submitted to the chancellor on the factual matters asserted by the plaintiff and admitted by the defendant, and the factual matters contained in the defendant's answer. No rebuttal to the denials of the defendant was offered by the plaintiff in the form of testimony or replication, nor could it be, as the plaintiff had stipulated that the facts upon which the chancellor was to base his decision were all contained in the bill and answer. Once a party agrees to a stipulation, he is bound by it, and the course of the trial is determined by it. *In re Cartmell Estate*, 120 Vt. 234, 240, 138 A.2d 592 (1958) ; *Whitmore* v. *Mutual Life Insurance Co.*, 122 Vt. 328, 329, 173 A.2d 584 (1961).

Under these circumstances, the chancellor was bound by the holding of Justice Jeffords in *Elliott* v. *Fish and Game Commission, supra,* 117 Vt. at 63–64:

> "The situation thus presented to the chancellor was that of facts alleged by the defendant to be taken by him as true and certain facts alleged by the plaintiffs which were denied. It is apparent that he could not make findings as to the denied facts except upon the taking of evidence. Such taking was waived by the plaintiffs when they agreed to have the case decided only on the bill and answer. It follows that the chancellor had as a basis for his order only such facts as were alleged in the bill and not denied and thus taken to be true, . . . and those which were alleged in the answer and not denied by a replication and to be so taken. The chancellor could only have found that the undenied facts alleged by both parties were true."

In the case at hand, the plaintiff alleged that the defendant's product, Rich's Coffee-Rich Non-Dairy Creamer ". . . is sold or offered for sale as a substitute for cream and 'half-

and-half', which are fluid dairy products." The defendant specifically denied this allegation. Neither a denial by way of a replication nor any evidence to support this allegation was or could be offered by the plaintiff following the stipulation to limit the facts of the case to those in the bill and the answer to rebut this denial by the defendant. However, the chancellor found in finding number 18 that the product was sold or offered for sale as a substitute for fluid dairy products, from which he drew the conclusion in his judgment order that the product came within the definition of an "imitation dairy product" in 6 V.S.A. § 2672(8).

■■ If there is no evidence to support a finding of fact, it must be set aside. *Montgomery, et al.* v. *Branon, et al.,* 127 Vt. 83, 87, 238 A.2d 650 (1968). Here, the allegation that the defendant's product, Rich's Coffee-Rich Non-Dairy Creamer, was sold or offered for sale as a substitute for fluid dairy products was specifically denied. *Elliott* v. *Fish and Game Commission, supra,* prevented the chancellor from making a finding on this denied allegation. The denial placed this allegation in issue, which could only be resolved by the taking of evidence. However, no evidence could be taken as the parties stipulated to limit the case only to those matters ". . . asserted by the Plaintiff and admitted by the Defendant . . . ." This allegation was not admitted by the defendant but specifically denied. There was no evidence presented to support this denied allegation. The record is completely lacking in evidence which could possibly support the chancellor's finding of fact that the defendant's product was sold or offered for sale as a substitute for fluid dairy products. Therefore, this finding, lacking factual support, must be set aside. Subsequently, the decree based on this erroneous finding cannot stand.

The record before this Court does not reveal any other facts which would bring the defendant's product within the statutory definition of an "imitation dairy product" in 6 V.S.A. § 2672(8) and subject the defendant to the requirements of 6 V.S.A. Chapter 151. Hence, the chancellor had no other recourse than to dismiss the plaintiff's bill. *Elliott* v. *Fish and Game Commission, supra,* 117 Vt. at 63.

 The bill requesting that the defendant conform with the requirements of 6 V.S.A. Chapter 151, must be dismissed. Therefore, the strictures of this legislation are not here placed on the defendant; hence, there is no showing of any injury or any disadvantage statutorily imposed on the defendant. Without such injury or disadvantage being present, this Court is not obliged to examine the statutes in question for constitutional defects. See *State* v. *Caplan*, 100 Vt. 140, 154, 135 A. 705 (1927), and cases cited therein. This Court, therefore, will not consider the constitutional arguments raised by the defendant, since the disposition of this case does not require it. *Juaire* v. *Juaire*, 128 Vt. 149, 152, 259 A.2d 786 (1969); *Chase* v. *Billings*, 106 Vt. 149, 155, 170 A. 903 (1934).

 Since no purpose would be served by a remand of this cause, as the chancellor would have no recourse but to dismiss the bill, we will enter final judgment here. *Haklits* v. *Oldenburg*, 129 Vt. 446, 448, 282 A.2d 802 (1971); *McGowan & McGowan* v. *Gaines, et al.*, 127 Vt. 477, 482, 253 A.2d 121 (1969).

*Decree reversed; restraining orders dissolved; bill dismissed.*