### Louise S. Bookstaver v. Town of Westminster

[300 A.2d 891]

No. 33-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 6, 1973

*Thomas P. Salmon, Esq.*. Bellows Falls, for Plaintiff.

*Albert T. Bolles, Esq.*, Bellows Falls, and *David A. Gibson, Esq.*, Brattleboro, on the brief, for Defendant.

**Keyser, J.** On April 1, 1971, the listers of the town of Westminster appraised plaintiff's real property for tax purposes at a fair market value of $250,000. On appeal to the board of civil authority under 32 V.S.A. § 4404, this valuation remained unchanged. The plaintiff then appealed to the Windham County Court pursuant to 32 V.S.A. § 4461. The court, after hearing, made findings of fact and entered its judgment order denying plaintiff's appeal. From this action of the court, the plaintiff brings the case to this Court for decision.

The central question raised by the appeal is the fair market value of plaintiff's real property.

The following facts appear of record. On October 11, 1968, the plaintiff, a resident of New York City, purchased 225 acres of land in the so-called Connecticut Valley Orchards section of the defendant town of Westminster for the sum of $54,000. This land consisted of about 12–15% of open land, or 27–33 acres. Of this, 7.2 acres are orchard, 5 acres having been replanted with new apple trees. The balance of the 225 acres, 191–198 acres, is woodland having no marketable timber thereon. There is also a 3.5 acre pond with a 4–5 foot mud base situated on the land.

During 1969 and 1970 the plaintiff and her husband, who deceased in late 1970, had a house constructed on the westerly edge of the pond. The house is of a contemporary design with five levels. The main entrance is at the fifth level as the house is constructed on a slope extending to the pond. It has a center stairway 8 feet wide and about 60 feet long which runs from the fifth level down to the pond and swimming pool. It is of standard construction with no fancy materials being used. There is a master bedroom and bath at the top of the stairway with a terrace opening. Coming down the stairway at half levels, there is a combination kitchen, dining room and living room. At the next level there are two bedrooms with separate baths. There is an opening onto a sun deck from these bedrooms. At the next level there is a game room, small kitchen and utility room. The next level has two bedrooms with individual baths. All bathrooms have separate

hot water heaters. At the foot of the staircase leading from the entrance is a heated and filtered swimming pool, 18 x 40 feet, with a deck surrounding it made of slate anchored in cement. A three car garage was also constructed with the house but separated from it.

The land to the south and west of the house is on a side-hill and slopes at a substantial grade. Also it is quite ledgy and totally wooded.

In order to reach the house site the plaintiff had a private road constructed about one mile in length from another private right of way. This road is approximately 75% through the woods. None of the land borders on or is served by a public road.

■■ The determination of the appeal is controlled by 32 V.S.A. § 4467 which reads as follows:

"Upon the appeal to the board of appraisers or the court of chancery, the board or court shall proceed *de novo* and determine the correct valuation of the property as promptly as practicable. The board or court shall take into account the requirements of law as to valuation, and the provisions of Chapter I, Article 9 of the Constitution of Vermont and the 14th Amendment to the Constitution of the United States. If the board or court finds that the listed value of the property subject to appeal does not correspond to the listed value of comparable properties within the town, the board or court shall set said property in the list at a corresponding value."

A *de novo* hearing by the court means that the case shall be heard the same as though it had not been heard before, or trying the dispute anew as though no decision had been previously rendered. 25A C.J.S. p. 483. The court is mandated by 32 V.S.A. § 4467 to determine the correct valuation of the property taking into account the requirements of law and the provisions of the State and Federal Constitutions.

■■ Appraisals of real estate are required by statute to be made on its fair market value. 32 V.S.A. §§ 4381, 4041. The fair market value of property is the price which the property will bring in the market when offered for sale and purchased

by another, taking into consideration all the elements of the availability of the property, its use both potential and prospective, any functional deficiencies, and all other elements such as age and condition which combine to give property a market value. There is no one or controlling factor. See *In re Heath,* 128 Vt. 519, 524, 266 A.2d 812 (1970).

On April 1, 1970, when the house was about 70% completed, the listers of the defendant town appraised the plaintiff's property at $229,000. As a result of the plaintiff's attorney appearing before the listers on the grievance day appeal, the listers reduced the appraised value from this figure to $114,650. But on April 1, 1971, the appraised value was raised by the listers to $250,000, an increase of over 120% with only a 30% completion of the house involved.

The following formula is the method used by the listers to appraise land in the town for the year 1971 as shown by defendant's Exhibit A.

"Westminster Land Schedule
1969

|  | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Site (1st acre) | 500 | 1500 | 2000 | 2500 |
| (Next) 4 acres | 200 | 300 | 400 | 600 |
| (Next) 20 acres | 100 | 150 | 300 | 500 |
| Balance | 25 | 50 | 75 | 280 |

No 2 about average
No 4 Conn Valley Tillage & CVO

Commercial Prices—about $2000."

Defendant's only witness, lister Holton, testified that category 1 is for the poorer land; unaccessible or landlocked land; number 2 is for the average land on a road; number 3 is above average as village land and developed land; and number 4 is high priced and extraordinary land along Connecticut Valley River, tillage land. There is no provision in the formula for increasing the valuations on account of access being necessary by private road.

Plaintiff's land was classified by the listers in "the most valuable" category and was appraised by them as shown by Finding No. 17 at the values following:

| | |
|---|---:|
| First acre (house site) | $ 2,500.00 |
| Next 4 acres ($600) | 2,400.00 |
| Next 20 acres ($500) | 10,000.00 |
| Remaining 200 acres ($280) | 56,000.00 |
| | * $ 79,900.00 |

\* Correct figure is $70,900.00

Lister Holton testified that they then added $25,000.00 which represented their "estimated cost" of the private road and "the electricity to it (site)." This would bring the total value for the land to $95,900. However, another estimated value of the land by the witness was $95,060.00 because the listers considered the acreage as 222 acres not 225 acres.

The first issue presented by the plaintiff is (1) to the court's refusal to find as requested by No. 29 of her requests and (2) to the court's finding No. 31 for the reason that it lacked evidentiary support. Plaintiff's request No. 29 reads:

"29) Three comparable properties in the neighborhood of the Plaintiff's property reflect the following characteristics:

a) Land of Theodore and Judith Parker consist of 129 acres with approximately thirty percent open meadow and 70 percent woodland with one half mile road frontage on a blacktop road with slope, comparable to the Bookstaver land; land carried in the Grand List of the Town of Westminster at $85.00 an acre average.

b) Lands of Feldman consisting of 116 acres with twenty percent open meadow and orchards and 80 percent wooded land at an elevation providing panoramic view of the Connecticut River Valley, and carried on the Grand List Book in the Town of Westminster at a fair market value of $146.00 an acre average price.

c) Lands of John Kawaky consisting of 53 acres made up of one half open meadow land and orchard and one half wooded land, carried on the Grand List Book of the Town of Westminster at $172.00 average per acre.

d) All of the premises described in a), b), and c) are more developable and, accordingly, more valuable than plaintiff's land."

Plaintiff's witness, Norman Wright, a person of experience in the field of construction and appraisal work, testified as to the above three properties that he used as comparables to the plaintiff's land.

The first comparable was the Parker property. He testified that it contained 129 acres, thirty per cent open meadow and seventy per cent woodland; that about a half mile of blacktop road provided access to it; that the land was comparable in slope to the plaintiff's land but more developable; and that it was appraised by the listers in 1971 at $10,900.00, an average of $85.00 per acre.

The second comparable was the Feldman land. Wright's testimony showed that this was 116 acres to the east of plaintiff's land; that it was located on the brow of a hill and had an outstanding and prime view of the Connecticut Valley and was serviced by a town gravel road; that twenty per cent was open land and eighty per cent wooded land; that part of the open land was orchard but the open land was not quite as comparable to plaintiff's land and is a little steeper; and that the 1971 appraised value was $16,825.00, an average of $146.00 per acre.

The third comparable in the immediate neighborhood of plaintiff's land was the Kawaky land. Wright testified it was an attractive parcel of 53 acres, one corner of which abuts the plaintiff's land; that about forty per cent was open meadow and orchards and sixty per cent wooded land; that although smaller in acreage it was a comparable piece of land with the same amount of orchard lands as plaintiff's property and was served by a town road; that it was appraised in 1971 for $9,100.00, an average of $172.00 per acre.

Wright further testified that using the comparable lands as a base the fair market value of plaintiff's land was $150.00 average per acre which he broke down to $125.00 an acre average plus $25.00 an acre for development costs. This amounted to a total valuation of $33,750.00 for the land.

There is a wide discrepancy between the valuation placed on the plaintiff's land by the board of listers and board of civil

140

authority and those which the evidence clearly established as to the comparable properties.

Witness Holton denied there was any such discrepancy. The evidence, however, undeniably shows otherwise. Application of the formula, *supra,* to the plaintiff's land and the three comparables, all of which Mr. Holton said were valued under category four, discloses the following significant facts:

| Property | Acreage | Appraisal | Av. per acre | Category 4 value |
|---|---|---|---|---|
| Parker | 129 | 10,900 | 85 | 44,120 |
| Feldman | 116 | 16,825 | 146 | 21,380 |
| Kawaky | 53 | 9,100 | 172 | 24,940 |
| Plaintiff's | 225 | 95,060 | 402 | 70,099 |

The Parker property figures out to be in category 2, the Feldman land in category 3 and the Kawaky a little over category 2. The foregoing results based on undisputed testimony establishes beyond question that the appraisal of plaintiff's land was decidedly much higher than other lands in the area.

Each comparable property had access to it by a public road but the plaintiff in order to reach and clear her house site had to build a roadway for one mile, 75 per cent of which was carved out of wooded land. By adding the $25,000 to the cost of the land the value per acre of the entire 225 acres was increased $111.00. The land had already been classified in the highest category under the formula and to inflate the value above that by the cost figure of the road and electricity to the site was unwarranted by the evidence and discriminated against the plaintiff. The existence of the road is a factor to be considered only in arriving at the true market worth of the entire property.

■ By finding No. 17 the court affirmed and adopted the identical appraisal of plaintiff's land as determined by the two town boards without having made any findings of fact regarding the comparable properties as requested by the plaintiff. It was not enough for the court to simply state, as it did, in finding No. 31 that it considered them. Confronted with the evidence before it and the statute, 32 V.S.A. § 4467, findings were required on this critical issue.

The court below as trier of the facts was bound to impartially and judicially weigh and sift the evidence in arriving at the facts established by the evidence and pertinent to the issues involved. Some evidence, because it was not only critically relevant, but also was uncontroverted and of undeniable credibility, required recognition in findings as a matter of law. See *Montgomery* v. *Branon,* 127 Vt. 83, 86, 238 A.2d 650 (1968), and cases there cited.

With findings regarding the three comparables being thus recognized together with the other findings, the court failed to comply with the statute, 32 V.S.A. § 4467, to "set the property in the list at a corresponding value." Moreover, 32 V.S.A. § 4467 mandates that the listed value of the plaintiff's property correspond to the listed value of comparable properties within the same town. *In re Petition of Reed,* 129 Vt. 102, 105, 272 A.2d 127 (1970).

Whether there was a compliance with the procedural requirement of 32 V.S.A. § 4467 raised a substantial question of law affecting the merits of the case and failure of the court to comply with the statute was prejudicial error. *Id.*

■ The defendant maintains that the appraisal of comparable properties in the same general area is only a piece of the evidence to be used by the court in its determination of the fair market value, citing *Petition of Mendon,* 127 Vt. 502, 253 A.2d 139 (1969). However, since that decision was handed down, 32 V.S.A. § 4467 was enacted and mandates the use of comparable property values in the determination of an appeal from the board of civil authority's appraisal when one of the prime issues is that the listed property of comparable properties did not correspond to the listed value of plaintiff's land.

■ The law in this jurisdiction requires that findings of fact shall not be set aside unless clearly erroneous, and that the trial court is the judge of the weight of the evidence. V.R.C.P. 52; *Brown* v. *Pilini & Wilson,* 128 Vt. 324, 328, 262 A.2d 479. However, when a finding of fact is unsupported by any evidence, it must be set aside. *Eurich* v. *Coffee-Rich, Inc.,* 130 Vt. 537, 298 A.2d 846 (1972).

■ In this case, finding 31 that the valuation of plaintiff's property corresponds with other comparable properties in the appellee town is completely without any evidentiary support. The only evidence of comparable property values are those far less than the valuation placed on the plaintiff's property by the listers. As this finding must be set aside, there appears no finding, nor can any be inferred because of the absence of any evidentiary support, that the listed value of plaintiff's land corresponded to the listed value of comparable properties in the same town.

Absent such finding, it then became the duty of the county court to set the plaintiff's property in the list at a value corresponding to comparable properties. 32 V.S.A. § 4467; *In re Petition of Reed, supra,* 129 Vt. at 106. The county court was in error in not so doing, and in the absence of this essential finding, the judgment of the county court denying the appeal cannot stand. *Eurich* v. *Coffee-Rich, Inc., supra.*

■ The defendant, however, maintains that the function of this Court in regard to this situation is to keep inferior tribunals within the limits of their jurisdiction and see that they exercise it with regularity, citing *In re Heath,* 128 Vt. 519, 266 A.2d 812 (1970). This was the law with respect to the issuance of a writ of *certiorari,* the means by which this Court formerly reviewed tax appraisals. But since that case was decided, 32 V.S.A. § 4466 became effective. It there provides that statutory appeals of tax appraisals to the commissioner are under the administrative procedure act, 3 V.S.A. Chapter 25, unless expressly waived by all parties. Thus a proceeding of that nature will be regarded as an appeal and not a petition for a writ of *certiorari.* See *Town of Barnet* v. *New England Power Co.,* 130 Vt. 268, 291 A.2d 396 (1972). And if the appeal is to the court, as here, the procedural law governing appeals to this court applies as in other cases.

■ The law requires that the methods of taxation must operate equally upon all of the inhabitants. See Chapter I, Article 9, Vermont Constitution; Fourteenth Amendment to the United States Constitution; *Clark* v. *Burlington,* 101 Vt. 391, 143 A. 677 (1928); *In re Hickok's Est.,* 78 Vt. 259,

62 A.2d 724 (1906). This law applies equally to the evaluation of property for tax purposes. Furthermore, it is also required by 32 V.S.A. § 4601 that "Taxes shall be uniformly assessed on the lists of the persons taxed, unless otherwise provided by law." One vital purpose of 32 V.S.A. § 4467 is to grant to an aggrieved taxpayer the opportunity to establish such uniformity as it relates to his property.

Here, the evidence clearly established a decided lack of uniformity between the appraisal of other taxpayer's land and that of the plaintiff. This resulted in an unfair and discriminant appraisal of plaintiff's land.

A close reading of the record establishes that the April 1, 1971, appraisal was determined by the listers solely on a cost basis except for the land. We have already considered the appraisal of the land. The board of civil authority adopted without change the listers' appraisal. Then the court by its findings and action affirmed the appraisal valuation on the identical basis.

On November 23, 1972, one week before trial in the court below, Mr. Holton accompanied two appraisers from the state tax department to plaintiff's property "for the purpose of determining its fair market value" using the so-called Knowles system. This involves a "cost estimating" approach to determine the appraised value of the improvements and is what can well be termed a "rule of thumb" test of value. The manual states that all building costs in the cost section of the manual are based on an average of building construction costs in the New England area. Defendant's Exhibit H is a copy of the tabulated results of this inspection shown to have been made "by DCW" (Donald C. Wood, a state appraiser).

The court made a finding of the valuations arrived by the listers under the Knowles system. The finding was immaterial since the issue was the fair market value of the property as of April 1 and not on November 23. Furthermore, it related only to the action of the listers. The finding lends no support to the decision of the court.

The tax appraisal of plaintiff's property is to be measured by the market value of the land together with its improve-

ments as a whole. To be sure, the value of the buildings are proper factors to be considered in arriving at the true market worth of the entire property. The extent to which the improvements contribute to the total value depends on how much they add to the overall market value of the property as a unit. And while material to the market value, the independent replacement or construction costs are not the sole basis for determining the fair market value. This is not to say that construction costs are not admissible as a circumstance to be considered with all other factors.

We held in *Demers* v. *City of Montpelier*, 120 Vt. 380, 389, 141 A.2d 676 (1958), that cost and value are not necessarily the same. And if it appears that the cost basis was the producing cause or the sole basis of the appraisal, it was error and without foundation in law. *In re Heath, supra,* 128 Vt. at 524.

The value of the house was determined by the court, as well as the town officials, solely on a cost basis. This fact together with the erroneous valuation of the land requires a reversal of the case.

Our disposition of the case renders it unnecessary to consider any remaining questions raised by the appeal.

*Judgment reversed and cause remanded.*