# Belle Whittemore and Mary Jane Rappaport v. Carroll Cooley and Beverly Cooley

[520 A.2d 1002]

No. 84-240

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed December 12, 1986

*Alexander L. Evarts*, Windsor, for Plaintiffs-Appellees.

*Law Offices of Davis, Rounds & Sachs, P.C.*, Windsor, for Defendants-Appellants.

**Peck, J.** Defendants appeal from a judgment of the Windsor Superior Court establishing ownership in plaintiffs of a three-foot strip between the parties' properties in Windsor. We reverse and remand.

Plaintiffs' property lies south of defendants' on the easterly side of Court Street in Windsor. Deeds executed in 1885 and 1887 in defendants' chain of title give them a total of 73 feet of frontage on the easterly side of Court Street. Plaintiffs concede that, based on these two deeds alone, the southerly line of defendants' property would embrace the contested three-foot strip. However, plaintiffs rely on an 1889 deed which they claim conveys title in

the strip to their predecessors in title. This later deed reads in relevant part as follows:

> All that land southerly of a line situate on Court Street in the Village of Windsor between the dwellings of said Frances S. Wilder and Jennie Butler commencing at a stone post thence running easterly on the northerly side of a locust tree to the end of a bank wall on the land of said Jennie Butler thence easterly on the same line to the land of Sarah Hubbard. Meaning to convey a strip o [sic] land southerly of said line.

As to the 1889 deed, the trial court found that "[t]he stone post and the locust tree are no longer in existence. The bank wall is in existence. However the end of it is imprecise and cannot be located."

In addition to their claim of record title, plaintiffs assert adverse possession of the area within the three-foot strip. Plaintiffs claim that a picket fence was installed by appellee Whittemore's husband on May 11, 1964, along the line they claim was described in the 1889 deed. Moreover, they argue that, in 1979, defendants filed a petition for a zoning variance to build a garage within two feet of the picket fence erected by plaintiffs, thereby acknowledging that fence as the true boundary. In 1982, defendants removed the picket fence and built a stockade fence running from east to west at the line they asserted under the 1885 and 1887 deeds.

The trial court found that plaintiffs erected a picket fence in 1964 along a line consistent with their present property claim. The court concluded that plaintiff Belle Whittemore kept a diary and that "[t]he May 11, 1964 entry stated that Harry Whittemore erected a picket fence along a portion of what Plaintiffs claimed to be their northerly boundary." There was testimony by Belle Whittemore about a diary entry referring to a fence, but, according to the testimony, the entry simply stated, "Harry finished the fence tonight for Cynthia and the dogs." Nothing in the diary indicated where the fence was erected or whether it was a picket fence. Other testimony indicated that an entirely separate, fenced enclosure for dogs had been built at the same time in the plaintiffs' backyard.

The trial court found on the basis of the testimony of Margaret Mayo, a friend of plaintiff Belle Whittemore, that "[t]he aforesaid picket fence was in place when Margaret Mayo first knew

Belle Whittemore," which was about 1962. The court also found that Belle Whittemore's friend Jennette Lynch saw "the aforesaid picket fence over the years, and there was no change in location of the picket fence from the time she knew Belle Whittemore in 1960 until the time the fence was removed by defendant Cooley." In sum, these two witnesses placed the fence at the location asserted by plaintiffs two and four years prior to plaintiffs' own claim for the date when it was erected, 1964.

For whatever reason, the trial court did not discuss defendants' evidence in its findings and conclusions, though their evidence was somewhat more detailed than that of plaintiffs. Armand Vesina, the realtor who sold the property to defendants in 1968, testified that there was no picket fence dividing the property in that year. In his capacity as a line foreman for the Central Vermont Public Service Corporation (CVPSC), he also supervised the emplacement of a utility pole somewhere between the parties' properties at some time between 1970 and 1976. He testified that there was no picket fence on the property when he set the utility pole and that CVPSC got permission from the Cooleys to set the pole. Mr. Vesina testified as follows:

Q. Was there a picket fence when you did this, sometime between 1970 and '76, between the Cooley property and the Whittemore property?

A. No. There was no fence there because we asked Mr. Russo for permission to back with our trucks across, which is not on Mr. Cooley's property, to set that stub die pole; and we went around Mr. Whittemore's yard which we visited with him to bring our tools over to dig the hole because it was over the bank.

Q. So you drove trucks in here to set the pole?

A. We backed it up carefully across the lawn there, across Mr. Cooley's lawn.

Q. You are absolutely certain there was no fence?

A. I am positive.

Defendants also introduced a slide photograph of their property. The photograph was stamped "Aug 68" by the photographic processor, and, while it does not depict the entire length of the

boundary between the parties' properties, it does reveal that there was no fence of any kind along a significant portion of the boundary. Moreover, a neighbor, Robert Dumont, testified that he walked past the location in question on a daily basis for fifteen years and observed no fence between the lots until after defendants bought their property.

Where conflicting evidence is produced at trial, the credibility of the witnesses, the weight of the evidence, and its persuasive effect are matters for the trier of fact to determine; despite inconsistencies or substantial evidence to the contrary, this determination must stand if supported by credible evidence. *Beyel* v. *Degan,* 142 Vt. 617, 620, 458 A.2d 1137, 1138 (1983). In making its findings, however, the trial court must incorporate some recognition of all evidence that is critically relevant, uncontroverted, and undeniably credible. *Bookstaver* v. *Town of Westminster,* 131 Vt. 133, 141, 300 A.2d 891, 896 (1973).

Here, there was conflicting evidence regarding the existence of the picket fence during a crucial period of time, but the trial court failed to discuss defendants' evidence on this issue. Much of this evidence was controverted, and the court was free to disregard it as lacking credibility if such was its judgment. The photographic slide, however, was not questioned by plaintiffs, either as to its age or its authenticity, and it appears that the slide was both unambiguous and of critical relevance to, if not dispositive of, the issue of the fence's existence. Therefore, we hold that the lower court erred, as a matter of law, in its failure to include some recognition of defendants' photographic evidence in its findings.

In addition, after the trial court made findings that might have provided the basis for a conclusion of law with respect to plaintiffs' adverse possession claim, it went on to frame its conclusion on the basis of the 1889 deed. According to other findings, however, this deed lacked corroborating physical references. Consequently, we also hold that the trial court established no basis in its findings for the conclusion that plaintiffs sustained their case based upon the 1889 deed.

In the light of the errors noted above, there must be a new trial.

*Reversed and remanded for a new trial.*