NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 11

No. 2014-465

| | |
|---|---|
| John T. Adams II | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Civil Division |
| | |
| Town of Sudbury | June Term, 2015 |

Cortland Corsones, J.

Peter H. Banse of Banse & Banse, P.C., Americus, Georgia, for Plaintiff-Appellant.

Cindy Ellen Hill, Middlebury, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **REIBER, C.J.** This case arises from the often complex struggle that Vermont towns have had with taxing parcels of land that lie in more than one town. It is also the latest episode in a decades-long dispute between taxpayer and the Town of Sudbury. Taxpayer owns three units in a condominium community that lies in both Sudbury and its neighbor, Hubbardton. Taxpayer objects to Sudbury's tax assessment of the portion within its boundaries. He argues that the trial court erred in upholding: (1) the state law through which Sudbury made its tax assessment; (2) Sudbury's valuation of the portion within its boundaries; and (3) Sudbury's method of apportioning the tax burden among the owners of the condominium community. We affirm on all three issues.

¶ 2.    The condominium community is known as Wanee Villas and Resorts (Wanee).  It is located on the grounds of a former children's camp and consists of twenty-one individually owned units—residential buildings and their footprints—and an expanse of common land. Wanee's ownership and governance are detailed in two documents filed in the Sudbury land records: a 1978 declaration of protective covenants and a 1993 amendment to those covenants. These documents not only assign a percentage of ownership interest in the common land to each unit but also detail that each unit has an easement to access the common land.  Moreover, they create a common interest community as defined by 27A V.S.A. § 1-103(7) and a condominium as defined by 27A V.S.A. § 1-103(8).

¶ 3.    Wanee encompasses a total of 26.9 acres.  The vast majority of this land— including all the privately owned units—lies in Hubbardton.  The Sudbury portion consists solely of 1.29 acres of common land but includes 385 feet of prime frontage on Lake Hortonia, which greatly enhances the appeal of Wanee and its individually owned units.  Taxpayer personally owns three units and further owns a substantial stake in Wanee Enterprises, which is the successor corporation to the former children's camp and which itself owns eleven units.

¶ 4.    In 1996, taxpayer appealed Sudbury's tax assessment of the Sudbury portion of Wanee's land to the state appraiser.  Taxpayer and Sudbury stipulated to a valuation of $89,460 for the Sudbury portion, and the state appraiser entered this stipulation on the condition that this valuation would be listed for three years.  In 2007, taxpayer again objected to Sudbury's tax assessment of the land, arguing before the town's Board of Civil Authority and, later, the trial court, that Sudbury could not tax the land because all the individually owned units lay within Hubbardton.  Taxpayer voluntarily dismissed the case by agreement with Sudbury that it would not tax the units owned by taxpayer, Wanee Enterprises, or taxpayer's mother for the years 2007-2009.  Sudbury adhered to this agreement for those three years and then continued to refrain

2

from taxing the land at all as it waited on clarification from the Legislature regarding how to tax common lands belonging to a condominium community whose units lie entirely in another town.

¶ 5.    In 2012, the Legislature provided this clarification through an amendment to 27A V.S.A. § 1-105, which now states, in part:

> (a) In a condominium or planned community:
>
> . . .
>
> (2) if there is any unit owner other than a declarant, each unit shall be separately taxed and assessed, and no separate tax or assessment may be rendered against any common elements for which a declarant has reserved no development rights; provided, however, that if a portion of the common elements is located in a town other than the town in which the unit is located, the town in which the common elements are located may designate that portion of the common elements within its boundaries as a parcel for property tax assessment purposes and may tax each unit owner at an appraisal value pursuant to 32 V.S.A. § 3481.

27A V.S.A. § 1-105(a).  Sudbury then reappraised the Sudbury portion as part of a town-wide reappraisal that it had begun two years prior and whose results and methods were approved by the Vermont Department of Taxes.  Through this reappraisal—which used a systematic, multiple-factor formula derived from land tables, schedules, and adjustments—Sudbury valued the Sudbury portion at $177,445.  In response to the recent amendment to § 1-105, Sudbury then levied taxes for the land against the individual unit owners.  In doing so, it apportioned the tax burden among the unit owners in accordance with their percentage ownership of Wanee as specified in the 1978 declaration of protective covenants.

¶ 6.    In response to this new tax assessment, taxpayer first appealed to Sudbury's appraisers, then to the Sudbury Board of Civil Authority, and then, in November 2013, to the trial court.  Taxpayer raised three arguments before the trial court.  First, he argued that § 1-105 violates both the Equal Protection principle of the Fourteenth Amendment to the U.S. Constitution and the Proportional Contribution Clause of the Vermont Constitution.  Next, he

3

argued that Sudbury's valuation of the land at $177,445 was not supported by the evidence and does not represent the land's fair market value. Finally, he argued that Sudbury must not apportion the tax burden among the unit owners in relation to their percentage interest in Wanee but instead must apportion the burden equally to each unit. After holding a bench trial, the trial court entered its order in November 2014, finding against taxpayer on each of these arguments. The trial court upheld the tax assessment in all respects except for remand to apportion the tax burden among the unit owners in accordance with the 1993 amendments to Wanee's covenants rather than the original 1978 covenants. Taxpayer now bases his appeal on the same three arguments that he raised before the trial court.

## I. Constitutionality of 27A V.S.A. § 1-105

¶ 7. We begin with taxpayer's first argument, which is that 27A V.S.A. § 1-105 violates both the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Proportional Contribution Clause of the Vermont Constitution. Specifically, taxpayer contends that the law creates a situation in which properties that have common land in more than one town may be taxed at higher total rates than those with common land in just one town. Indeed, he alleges that an owner in his situation "pays as much as twice." Taxpayer further contends that this alleged situation violates the principle that any difference in tax burden between similarly situated citizens must have a reasonable and rational basis.

¶ 8. A tax is constitutionally valid if it meets two requirements. First, it must have been established for a reasonable purpose and bear a reasonable relation to that purpose. See Lathrop v. Town of Monkton, 2014 VT 9 ¶ 13, 195 Vt. 564, 91 A.3d 378, 382 ("[A] legislative classification must bear a reasonable relation to the purpose for which it is established" (quotation omitted)); see also Andrews v. Lathrop, 132 Vt. 256, 259, 315 A.2d 860, 862 (1974) ("[I]f any reasonable policy or purpose for the legislative classification may be conceived of, the enactment will be upheld."). Second, it must be fairly applied so that all within a given tax

4

classification are treated alike. See In re Prop. of One Church St. Burlington, 152 Vt. 260, 268, 565 A.2d 1349, 1353 (1989) ("Once fair classifications have been established, taxpayers within a given classification must be treated alike.").

¶ 9. These two requirements apply identically to taxpayer's Fourteenth Amendment and Proportional Contribution Clause arguments because we view the constitutional provisions as equivalent in the tax context. See In re Eddy, 135 Vt. 468, 472, 380 A.2d 530, 534 (1977) ("[A]s far as [tax] classifications are concerned, our proportional contribution clause is the practical equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution."). They also apply to § 1-105 because § 1-105 expressly creates two different tax classifications: one for common elements located entirely in one town and another for common elements located in two towns. Common elements located entirely in one town and for which a declarant has reserved no development rights may not be taxed separately at all. See § 1-105(a)(2) (describing that, generally, "no separate tax or assessment may be rendered against any common elements for which a declarant has reserved no development rights"). The value of this land is simply allocated to Wanee's individual units, which themselves are then taxed. But common elements located in a town other than the town in which the units are located may be taxed. See id. (" . . . [P]rovided, however, that if a portion of the common elements is located in a town other than the town in which the unit is located," former may tax that portion).

¶ 10. We conclude that § 1-105 is constitutionally valid because it creates a tax regime that is not only reasonable but also results in fair and uniform tax treatment if implemented properly. Towns are prevented from taxing lands that lie outside their boundaries, but they are free to raise funds in accordance with the amount and value of land that lies within their boundaries. And assuming towns value their lands properly, landowners are treated uniformly because they pay like taxes, regardless of whether their lands lie in one town or multiple towns.

¶ 11.   Section 1-105 also satisfies a second principle of the Proportional Contribution Clause: Vermont's property tax system must be based on fair market value to ensure that the tax burden is shared proportionately.  Barnett v. Town of Wolcott, 2009 VT 32, ¶ 4, 185 Vt. 627, 970 A.2d 1281 (mem.) ("The goal of property-tax appraisal is to ensure that no property owner pays more than his or her fair share of the tax burden; this is accomplished by listing all properties at fair market value."); see also 32 VSA § 3481 ("The estimated fair market value of a property is the price which the property will bring in the market when offered for sale and purchased by another.").  This principle is reflected in our recent holding that when a contiguous piece of land lies in two or more towns, each of those towns may value and tax the portion within its boundaries so long as the combined valuation of each portion does not exceed the actual fair market value of the entire piece of land.  See Vanderminden v. Town of Wells, 2013 VT 49, ¶ 20, 194 Vt. 96, 75 A.3d 598 ("The fair market value must be divided between the towns . . . the sum of the values attributable to the part of the parcel in each town cannot exceed the fair market value of the whole parcel.") (citation omitted).  Section 1-105 reflects this holding and the broader fair market value principle because it leaves towns free to consider not only the qualities of that portion that lies within their boundaries but also the fair market value of the entire contiguous piece of land.  Id. ¶ 21("[T]he correct valuation for property . . . includes both the fair market value of the property overall and of the portion in the town involved in the appeal.").

¶ 12.   Having concluded that § 1-105 is constitutionally valid, we further note that taxpayer offers no evidence to bolster his assertion that his particular property is valued or taxed at a rate higher than it would be if it were entirely located within just one town.  Indeed, his own testimony was that he valued each of his units at $25,000 when considering their lakefront access, but at only $15,000 when not considering their lakefront access.  Meanwhile, the trial court specifically found that Hubbardton assessed taxpayer's units at just $12,800 each, "a clear indication that they are not assessing them as having lakefront access."  It also found that "the

6

property is not 'double taxed' as lakefront property."  This case is therefore unlike those in which towns have maximized the taxable value of the separate portions of land such that, when combined, they exceeded the actual fair market value of the land.  See Vanderminden, 2013 VT 49 (rejecting town's valuation of lakefront portion of property because it used model that placed primary value on lakefront, while neighboring town in which house was located used model that placed primary value on land immediately surrounding houses); see also Devon Energy Prod., L.P. v. Hockley Cnty. Appraisal Dist., 178 S.W.3d 879, 882-83 (Tex. Ct. App. 2005) (rejecting combined valuation of land by two towns amounting to 134-percent of land's actual fair market value because "appraisal districts assessing property crossing county lines are entitled to 'share it fairly but don't take a slice of [the other's] pie.' " (citing Pink Floyd, Money (Capitol Records 1973))).

¶ 13.  Here, taxpayer did not meet his burden of establishing that the combined valuations by Sudbury and Hubbardton exceeded the fair market value of Wanee.  Notably, it is true that § 1-105 does not contain language that on its own prevents two towns from valuing portions of land such that the valuations combined exceed the fair market value of the total property, as occurred in Vanderminden and Devon.  But the Proportional Contribution Clause of the Vermont Constitution, and the Equal Protection Clause of the U.S. Constitution require that the statute be applied in a way that does not subject taxpayer to taxation based on a total valuation in excess of the fair market value of the taxpayer's property simply because the property straddles town lines.

II.  Valuation of the Sudbury Portion

¶ 14.  We next address taxpayer's second argument, which is that the trial court's conclusion that the fair market value of the Sudbury portion was $177,445 is not supported by the evidence.  Here, taxpayer objects to Sudbury's method of calculating the land's value and tax burden through the use of land tables, schedules, and adjustments that take into account multiple

7

factors affecting the value of the land. Notably, the formula includes an "easement" adjustment to reflect that the land is merely a small portion of a much larger parcel. Taxpayer argues that this adjustment is insufficient and that that this formula should not be applied to the land because it was developed to value stand-alone parcels, not portions of land that belong to larger parcels. Instead—without proposing an alternative method—taxpayer contends that the land should be ascribed a lower value because it cannot be independently developed, accessed, or sold apart from the larger parcel.

¶ 15. We have long recognized that Vermont towns have discretion to use different appraisal methods to value property according to fair market value. See City of Barre v. Town of Orange, 138 Vt. 484, 486, 417 A.2d 939, 941 (1980) ("[M]any different methods exist for determining fair market value."). However, as a logical extension of our previous observation of the Proportional Contribution Clause, towns' appraisal methods must reflect fair market value, and this can be accomplished only by taking into consideration all elements that combine to give value to a property. See also Bookstaver v. Town of Westminster, 131 Vt. 133, 137, 300 A.2d 891, 893 (1973) (noting that "[t]here is no one or controlling factor."). Sudbury heeds our holdings concerning the importance of fair market value and multiple-factor assessments. Its method begins with a general land schedule provided by the State of Vermont and based on actual sales in the town over the previous three years. It then makes adjustments based on factors including terrain, accessibility, septic systems, and quality of structures. Notably, Sudbury's assessment system has been accurate over the years; the trial court found that its assessed values are very comparable to actual sales.

¶ 16. In the specific case of Wanee's assessment, the trial court found the following facts. Sudbury started with a schedule that was based on a finding that the average fair market value for a lot on Lake Hortonia is $1000 per linear foot of lake frontage. Applying this schedule to Wanee's total lake frontage, it determined that the property's value before

8

adjustments was $385,000. To this base value, Sudbury assigned factors of: (1) 0.80 for land quality because the beach front was overgrown; (2) 1.02 for depth factor because the parcel is slightly deeper than the average lot; (3) 0.70 for amount of lake frontage, which is above average in Wanee's case, and the per-foot value of frontage decreases as the amount of frontage increases; and (4) 0.80 because the parcel has an easement on it for the community owners and cannot be developed. After accounting for these factors—a multiplication of each factor against the base value—and then adding $1500 to account for two dilapidated structures, Sudbury arrived at a final assessed value of $177,445.

¶ 17. The trial court found that the system used by Sudbury to value taxpayer's land was accurate, and this finding was supported by the evidence. First, the starting schedule was based on actual sales data. Second, the adjustment factors for properties such as land quality, depth, and lake frontage reflect those elements that we have previously recognized as giving property a market value. Bookstaver, 131 Vt. at 136-37, 300 A.2d at 893 ("The fair market value of property is the price which the property will bring in the market when offered for sale and purchased by another, taking into consideration all the elements of the availability of the property, its use both potential and prospective, any functional deficiencies, and all other elements such as age and condition which combine to give property a market value."). Finally, we find that the town uses proper bases for determining the degree of adjustment for each factor. The depth factor and lake frontage adjustments are based on numerical charts and the easement adjustment is equal to the easement adjustments for other properties. For the land quality factor, the use of judgment to consider multiple features of the land is reasonable in light of the difficulty of assessing land quality. Moreover, the estimated land values have closely matched historical sale prices. We therefore conclude that Sudbury's appraisal method conforms to the Proportional Contribution Clause's fair market value requirement. It is unlike those systems that we have struck down as being unreasonable or too simplistic. See Bloomer v. Town of Danby,

9

135 Vt. 56, 57, 370 A.2d 194, 195 (1977) (striking town's formula for determining land value, which solely contemplated total acreage and did not adjust for location, type of land, accessibility, or sale of comparable property); Town of Barnet v. New England Power Co., 130 Vt. 407, 413, 296 A.2d 228, 232 (1972) (holding that it was error to restrict appraised fair market value to no greater than net book value).

¶ 18. We further note that this same analysis applies to taxpayer's argument that Sudbury's formula should not be applied at all to the land because it was developed to value stand-alone parcels, not portions of land that belong to larger parcels. On this point, taxpayer argues that the Sudbury portion is worth almost nothing because it cannot be sold on its own. But this ignores the trial court's finding that the Sudbury portion certainly added value to the whole when viewed as part of a larger property. It also ignores our long-standing precedent that contiguous lands should be treated as one under appropriate circumstances. We outlined those circumstances in Neun v. Town of Roxbury, 150 Vt. 242, 244, 552 A.2d 408, 410 (1988):

> All relevant factors must be considered in determining whether or not property should be assessed as a single parcel, including whether the property was conveyed in one deed, the character of the land and the purposes for which it is used, whether separately deeded tracts are contiguous, and whether the property currently functions as one tract for the owner.

We have since reaffirmed those circumstances in several cases concerning the tax treatment of lands lying in more than one town. See Vanderminden, 2013 VT 49, ¶ 12 (holding that taxpayer's land should be treated as one parcel because "[i]t is covered in one deed, used for one common purpose, and functions as a single tract."); Bullis v. Town of Grand Isle, 151 Vt. 503, 504, 561 A.2d 1359, 1360 (1989) (affirming that parcels of land that are between a quarter of a mile and one mile apart should not be treated as contiguous for tax purposes). We see no reason to diverge from this precedent. Moreover, we find that the Sudbury and Hubbardton portions together function as one tract; the Sudbury portion enhances the whole by providing the units

with lakefront access. We therefore conclude that it is proper to value Wanee's Sudbury portion as part of the whole parcel. The evidence supports the trial court's conclusion about its fair market value.

### III. Taxation of the Ownership Interests

¶ 19. We finally address taxpayer's third argument, which is that the trial court erred by upholding Sudbury's apportionment of the tax burden among the unit owners in relation to their percentage interest in Wanee. He contends that this method is unreasonable and therefore violates both the Fourteenth Amendment and the Proportional Contribution Clause. He further contends that this method does not reflect the actual value that the common property adds to each unit and therefore violates the principal that property tax appraisal value should be proportionate to fair market value. In place of this method for apportioning the tax burden, taxpayer proposes that the tax burden arising from the common property in Sudbury should fall equally on each unit.

¶ 20. We disagree. Sudbury's method of apportioning the tax burden according to ownership interest rather than equally to each unit is reasonable because it takes into account the benefits and burdens of condominium ownership. It comports with the fair market value principle of the Proportional Contribution Clause for the same reason; it reflects the actual value that the common property adds to each unit. Under Vermont law, common expenses in a condominium are charged according to the unit owners' interests in the common area. See 27 V.S.A. § 1310 ("[T]he common expenses shall be charged to[] the apartment or site owners according to the percentage of the undivided interest in the common areas and facilities."). This burden is balanced by the actual benefit of having an ownership interest. Upon termination of the condominium, the unit owners gain an interest in the property owned in common according to their previous ownership interest of the condominium. See 27 V.S.A. § 1316 ("[T]he property shall be considered to be owned in common by the apartment or site owners. The undivided

interest in the property owned in common which shall appertain to each apartment or site owner shall be the percentage of undivided interest previously owned by the owner in the common areas and facilities."). Tax is a common expense, so it is reasonable for Sudbury to allocate this burden across the different units according to percentage of ownership interest. It is therefore consistent with the Fourteenth Amendment and the Proportional Contribution Clause.

¶ 21. This allocation also reflects the historical and prevalent practice in Vermont. In our state, the common area of a condominium community is not taxed as if it is completely independent of the units that own easements to it. Rather, it is allocated to the individually owned units that comprise the condominium, and then those units are taxed. This principle is explained in 27 V.S.A. § 1322, which reads, in part:

> Each apartment or site and its percentage of undivided interest in the common areas and facilities shall be considered to be a parcel and shall be subject to separate assessment and taxation by each assessing unit and special district for all types of taxes authorized by law . . . . Neither the building, the property nor any of the common areas and facilities shall be deemed to be a parcel.

27 V.S.A. § 1322. This practice is well established in our state, and condominium owners like those in Wanee have advance notice of it. We further note that, despite taxpayer's argument to the contrary, Sudbury's method comports with § 1322. The statute prohibits taxing common areas as a separate parcel only if those common areas lie in the same town as the community's units. It does not prohibit taxing common areas that lie in a wholly separate town from the units. Here, none of Wanee's units lie within Sudbury, so Sudbury may tax the portion of common area lying within its boundaries.

Affirmed.

FOR THE COURT:

_____

Chief Justice

12