# Charles L. Montgomery et al

## v.

# W. Barry Branon et al

[216 A.2d 41]

October Term, 1965

Present: **Holden, C. J., Shangraw, Barney and Keyser, JJ. and Divoll, Supr. J.**

Opinion Filed December 13, 1965

*Clayton H. Kinney* for plaintiffs.

*Hanford Davis* for defendants.

**Barney, J.** The plaintiffs have brought suit, on the basis of a record title acquired in 1952, to oust the defendants from lands held by them under a claim of right going back forty years. The issue is the sufficiency of the defendants' claim of title by adverse possession.

About 1921 or 1922 a man named Scott built a camp on Hinkum Pond, which is still standing. A year or two later he was deeded about a quarter of an acre of land surrounding the building and upon which it sits. Through subsequent deeds to various users and occupiers of the camp property, the premises have been transferred to certain persons who are defendants in this litigation. These conveyances have all been recorded in the land records of Sudbury, the town where the camp is located. Access to the property was over an old road by permission of some landowners named Ramp.

In 1952, knowing of the presence of the camp, the plaintiffs purchased record title to most of the land involved, including that upon

which the camp sits, from the Central Vermont Public Service Corporation. In 1953, by warranty deed, they acquired title in fee simple to the Ramp road. In 1954 they bought other property to the west of their first purchase, which took in the balance of the defendants' quarter-acre. In 1957 the plaintiffs made it known to the defendants that they challenged their title. Thereafter, they began this suit. Since the beginning of this litigation the plaintiffs have also acquired the half interest of the Maroneys, two of the original defendants.

Left at issue now is a one-half interest in the camp and environs. The defendants concede superior record title in the plaintiffs and rely entirely on adverse possession. The county court's judgment order recognized their claim only as to the cottage itself and the land beneath the building. The defendants claim error in that they view the facts as establishing sufficient occupancy of the quarter-acre as to validate their claim to all, or nearly all, of it.

The land in the vicinity of the cottage is described as open, unenclosed land, grown up to saplings, brush and second-growth trees. The surrounding area is open, unenclosed woodlands. The camp has been seasonally, but regularly, occupied as a summer cottage and fishing and hunting camp. Below the rocky bluff or cliff in front of the camp and upon which it is located, on the shore of the pond, docks have been maintained for many years, and boats of the occupants of the camp tied up.

There is an unenclosed roadway, wide enough for a car to travel, leading from the Ramp road to the pond in the vicinity of the dock. It has been used occasionally by the defendants to put their boat in the water. Others have also used this road. A well worn and clearly visible footpath leads from the kitchen door of the camp to the pond. Another such path leads from the Ramp road to the cottage, also going to the kitchen door. These paths, taken together, represent travel completely across the lot claimed in an east-west direction, as well as about half of the north-south direction. The camp itself is located in the northwesterly corner of the lot. The old road leading to the pond comes very near to being the southerly boundary of the lot. The path from the camp to the Ramp road leads out to the southwest corner of the claimed lot, where the old road to the pond and the Ramp road join. The path from the camp to the pond goes to the southeast corner of the lot, meeting the old road to the pond at the dock. Outhouses have been maintained to the rear of the camp, in the northwest corner of the lot. Also, at least three areas for dumping refuse have been used

over the years, two in the neighborhood of the paths and one outside the area claimed.

The court found that the defendants conceded that their claim was limited to all or part of the land represented in their deeds, described there as follows:

> Commencing about twenty feet westerly of the west shore of Hinkum Pond at a marked hemlock tree; thence westerly to an old pine stump; thence northerly to a point; thence easterly to a marked pine tree about twenty feet from the shore of Hinkum Pond; thence southerly to the place of beginning; containing one-fourth of an acre, more or less, being bounded on all four sides by land of Mary Germond. Also a right of way over lands owned by said Mary Germond to and from the road and to and from Hinkum Pond.

The findings also state that the boundaries of the lands claimed by the defendants are not visible on the ground with any degree of certainty. These defendants were found to have purchased the property without having any specific bounds pointed out to them. Various marked trees and stumps are noted in the findings, but are not accepted by the court as being the monuments mentioned in the description.

An old sketch, found folded in the deed from Scott to his successor, referred to landmarks bounding the property, including a tree near the northeast corner of the lot blazed with an "S." The findings disclose that it is still there. The court made a finding that the defendants did not claim that that tree marked a corner, which is correct, as far as it goes, but for some reason the court did not include the witness's statement that it was "on the line." The existence of this tree did not come to the attention of the defendants until the time of the first hearing. At a second hearing they made reference to different trees and stumps as possibilities for answering the calls of their deed from those proposed at the first hearing, although they were located in the same general area.

With this evidence in its findings, the trial court stated that it was unable to find that the defendants had established title by adverse possession to any land other than that directly beneath the camp. The findings disclose that the court, in the face of evidence and findings as to annual use of the camp, was convinced that this activity was insufficient to establish a claim to any territory other than the area occupied by the building itself. Moreover, the inability of the defend-

ants to show a long-standing claim to any particular boundary marks, or satisfy the court as to the identity of actual trees and stumps with those stated in the deed, from the findings, obviously led the court to require the defendants to show occupany of the whole area claimed of a higher degree than that shown by the evidence, if their claim was to prevail. It is clear that, in the absence of evidence satisfying it as to the locations of the corners of the lot, the court took the view that the recorded deeds did nothing to supplement the possessory acts evidenced.

The court required too much. This is clear from the findings. The presence of a claim of title in the land records meant that actual and exclusive occupation of any part of the deeded premises carried with it constructive possession of the whole, absent any competing actual occupation. *Hassam* v. *Safford Lumber Co.*, 82 Vt. 444, 449-50, 74 Atl. 197. The occupancy needed only to be that consistent with the nature of the premises, here a camp in unenclosed woodland. *Amey* v. *Hall,* 123 Vt. 62, 67-8, 181 A. 2d 69; *Chase* v. *Eddy,* 88 Vt. 235, 239, 92 Atl. 99. There may even be lapses of time between acts of possession. *Aldrich* v. *Griffith,* 66 Vt. 390, 401-2, 29 Atl. 376.

Some confusion may have arisen because, from the testimony, the defendants seem to be simultaneously claiming under the deed, and beyond the limits of the deed, by adverse user. This can be done, but the measure of proof of occupancy differs for the two situations, and the claims tend to work against each other. The resolution of this difficulty, based on the rule that a claim under a deed is taken to be a renunciation of anything outside of it, is dealt with in *Chase* v. *Eddy,* supra, 88 Vt. 235, applicable here.

The court found itself, in the presence of evidence of occupation and evidence of boundary locations, dissatisfied with the proof. This rejection of evidence and findings appear to be based on a misapprehension of the defendants' obligation of proof. For example, the fact that the "S" blaze was only recently discovered does not require its rejection as evidence of the location of a boundary. See *Vt. Shopping Center* v. *Pettengill,* 125 Vt. 145, 152, 211 A.2d 183.

The effect of the court's position was to impose on the defendants an inordinately large evidentiary burden. The determination of adverse possession is a mixed question of law and fact. *Smith* v. *Vt. Marble Co.,* 99 Vt. 384, 395-6, 133 Atl. 355. The evidence disclosed in the findings themselves are sufficient to validate the defendants' claim of adverse possession to more than the mere camp and the land it rests on. Therefore, the judgment must be reversed.

Since it is plain that the court applied too rigorous a test to the defendants' evidence, this Court has no way of knowing what might have been persuasive to it as to the location of the corners of the lot from the evidence before it, had it applied correct standards. To that end there must be a remand for further findings, with the taking of additional evidence, if necessary, so that a decree may be drawn setting forth with certainty the bounds of defendants' lot. *Barr* v. *Guay,* 125 Vt. 1, 4, 209 A.2d 304.

*Judgment reversed and cause remanded for further proceedings not inconsistent with the views expressed herein.*

Smith, J. did not sit.