### Charles L. Montgomery et al. v. W. Barry Branon et al.

[ 238 A.2d 650 ]

December Term, 1967

Present: Holden, C.J., Shangraw, Barney and Keyser, JJ.

Opinion Filed February 6, 1968

84

*Clayton H. Kinney, Esq.,* Rutland, and *Black & Plante,* White River Junction, for the Plaintiffs.

*Hartford G. Davis, Esq.,* for the Defendants.

**Keyser, J.** This is the same case reported in 125 Vt. 362, 216 A.2d 41. The plaintiffs' action is in ejectment to recover possession of a small lot of land lying on the westerly shore of Hinkum Pond in the town of Sudbury. The defendants concede superior title in the plaintiffs but claim ownership by adverse possession.

· About 1921 or 1922 Charles Scott and wife built a camp in the northwesterly corner of the lot in question. Later, in 1924, the Scotts were deeded one-fourth acre of land, more or less, which included the land on which the camp was situated. By subsequent deeds to various users and occupiers of the camp property, the premises have been transferred to certain persons including the defendants. All of the deeds were duly recorded in the town land records.

In the previous proceedings the trial court found that the defendants had acquired by adverse possession only the land on which the camp sits. We there held that the court below "applied too rigorous a test to the defendants' evidence" in making its findings. We remanded the case "for further findings" so that the bounds of defendants' lot would be set forth with certainty. On rehearing the court made new findings of fact and it is from certain of these findings and the judgment order that the defendants have appealed. The appeal brings before us the problem of the boundaries of the area acquired by the defendants by adverse possession.

The defendants' chain of title relates back to a deed from Charles W. and Mildred M. Scott to Walter F. Scott, dated October 23, 1926. The deed to the defendants and Thomas J. and Vivian Maroney was from Cecelia Mulcahy, dated October 18, 1943, the then owner. Each succeeding deed from 1926 conveyed the following described land:

Commencing about twenty feet westerly from the west shore of Hinkum Pond at a marked hemlock tree; thence westerly to an old pine stump; thence northerly to a point; thence easterly to a marked pine tree about twenty feet from the shore of Hinkum Pond; thence southerly to the place of beginning, containing one-fourth acre of land, be the same more or less, being bounded on all four sides by lands of Mary Germond. Also a right of way over lands owned by said Mary Germond to and from the road and to and from Hinkum Pond.

In 1952 the plaintiffs acquired record title to most of the land involved, including that upon which the camp is situated. In 1954 they bought other land to the west of their 1952 purchase which took in the balance of any land claimed by the defendants. The plaintiffs had knowledge of the existence of the camp and in 1959 challenged defendants' title by bringing this suit. Thereafter, the plaintiffs purchased the one-half interest of the Maroneys who were originally in-

cluded as defendants. At issue is the one-half interest in the camp and land in the surrounding vicinity claimed by the defendants Branons.

By Findings 21 and 22 the trial court found that the defendants had acquired title to the following described land by adverse possession:

> Beginning at a point where stands a pine tree located approximately twenty-nine feet from the west shore or westerly waters edge of Hinkum Pond, which tree bears or bore the legend S thereon and which tree will designate the northeast corner of the area here described, thence extending west therefrom in a straight line a distance of 99 feet; thence turning at a right angle and running in a southerly direction in a straight line a distance of 99 feet; thence turning a right angle and running east in a straight line and parallel with the first mentioned line a distance of 99 feet; thence turning a right angle and running northerly in a straight line parallel with the west shore line a distance of 99 feet to the pine tree and point of beginning.

The court stated in said finding that "In the preparation of this description the Court has proceeded on the basis the camp building extends north and south lengthwise and is directly west of the pond." The result of this is that each of the boundary lines drawn by the court runs parallel with the corresponding side of the camp building. The judgment order is rooted in this finding.

The defendants claim there is no evidence in the case from which the court could reasonably have found the lot acquired by the defendants was 99 feet square. They also claim the court has completely ignored the undisputed and uncontradicted evidence as to monuments and boundaries mentioned in the deeds.

The court below as triers of the facts is bound to impartially and judicially weigh and sift the evidence in arriving at the facts established by the evidence and pertinent to the issues involved. *Potwin* v. *Tucker,* 126 Vt. 414, 234 A.2d 430, citing *Pacquin* v. *Pacquin,* 125 Vt. 243, 249, 214 A.2d 90. Some evidence, because it is not only critically relevant, but also is uncontroverted and of undeniable credibility, requires recognition in findings as a matter of law. *Id.,* citing *Gramaton National Bank & Trust Co.* v. *Beecher,* 121 Vt. 39, 47-48, 146 A.2d 246.

■ It is well established law that findings of fact must stand if there is any credible evidence fairly and reasonably supporting them. *Crawford* v. *Lumbermen's Mutual Casualty Co.*, 126 Vt. 12, 16, 220 A.2d 480. Although this court has the power to set aside a finding of the lower court, we will not do so where the evidence is in conflict, merely because the evidence preponderates against it. *Little* v. *Little*, 124 Vt. 178, 182, 200 A.2d 276. Intervention on appeal is justified only when contrary proof so predominates the controversy that the record establishes no reasonable basis upon which the finding can stand. *Crawford* v. *Lumbermen's Mutual Casualty Co., supra.* And it follows that if it appears from a review of the record that there is no evidence to support the court's findings they may be set aside.

■ A careful review of the record and study of the exhibits leaves us to conclude that the finding as to the lot lines is error. We find no reasonable basis in the evidence to support a lot having the boundaries determined by the finding and none has been pointed out to us by the plaintiffs.

■■ The first mentioned deed to the defendants' predecessor back in the 1920's, as well as all subsequent deeds, embraced the land in controversy. The actual and constructive possession and use of the lot and rights of way therein described was continued by the successive grantees and inured to the benefit of the defendants and was available to them in the establishment of their title by adverse possession. *Hassam* v. *J. E. Safford Lumber Co.*, 82 Vt. 444, 450, 74 A. 197. Mr. Scott built the camp in 1921 or 1922 and shortly thereafter was given a deed of the land in that area and rights of way. He, as well as the later grantees, entered into possession of the premises. These facts give character to their acts and show acts of ownership. It is presumed that they entered and claimed in their own right and not as a trespasser. *McGrady* v. *Miller*, 14 Vt. 128.

The evidence discloses other facts uncontradicted by the plaintiffs. The camp is located about 75 feet westerly from the west shore of the pond on a steep bank overlooking the pond to the east. The area in the vicinity of the camp is open, unenclosed land with a growth of brush, saplings and small trees. The camp has been used and occupied principally as a hunting and fishing camp.

Hinkum Pond is reached by a dirt road referred to as the "Ramp road." This road approaches to within about 100 feet from the camp,

then turns southerly and continues to other lands and around part of the pond. At the point where the Ramp road is nearest to the camp, it is intersected by a roadway which leads northwesterly direct from a dock on shore of the pond and a 10-inch elm tree close to the shoreline. There is a steel cable around the elm which extends southerly 18 feet along the shoreline to and around a 14-inch oak tree. Boats were tied up to this cable by Michael C. Mulcahy who possessed the property from 1927 to 1941 under a deed from Walter F. Scott. This roadway from the dock to its intersection with the Ramp road was used by Mr. Mulcahy to put boats on the pond. It has also been used at times by the defendants since 1943 to put their boat on the pond.

The defendants reach their camp building by a roadway travelable by car which leads off from the Ramp road at the intersection of that road and the roadway to the pond described above. Plaintiff Phillips testified that this road was built by Mr. Mulcahy and his predecessors.

The evidence also is that there is a well-worn path from the kitchen door of the camp to the pond. The path went southeasterly entering the above-described roadway leading to the dock as it reaches the pond. Mr. Phillips testified this path has existed at least since 1933 or 1934 when he first became familiar with the property. And the existence and use of the path prior to that time can readily be presumed from the location and purpose for which the camp was maintained. This path and the roadways to the camp and the pond, taken together, represent travel completely across the lot claimed in an easterly-westerly direction and nearly half of the northerly-southerly direction.

An outhouse has been maintained northwest of the camp in connection with the use of the camp with little change in its location. The present outhouse is located about 35 feet from the northwest corner of the camp and has been where it is now since 1939 or 1940 where Mr. Mulcahy placed it. Also, to the south and southwest of the camp within the area claimed two places have been used over the years for dumping refuse. One is on the easterly side of the roadway leading into the camp lot, the other being on the westerly side. There is also a grass area westerly of the camp.

Various of the objects and details above-mentioned are clearly shown on Defendants' Exhibit G. This is a survey map prepared to scale of the area involved by defendants' witness Elevert, a

consulting forester. Furthermore, there is testimony from the plaintiff Stafford that it was clearly visible the land around the cottage had "at one time been cleared." Plaintiff Phillips also testified in addition to the above that when he first went to the pond he used Mulcahy's boat to go fishing, that he knew the camp was there, remembered the steel cable between the two trees on the lake shore and referred to the road to the pond from the Ramp road as "a good wide path." This testimony of the plaintiffs was neither expressly nor impliedly contradicted and is binding on the plaintiffs. *Wellman Admr.* v. *Wales,* 98 Vt. 437, 440, 129 A. 317; *Pellon* v. *Connecticut General Life Ins. Co.,* 107 Vt. 129, 143, 178 A. 902.

Confronted with this uncontroverted evidence of occupation under color of title of which the plaintiffs were cognizant, the burden was on the plaintiffs to show any competing evidence of possession or intrusion affecting the land claimed by the defendants. The record discloses no such evidence. It indicates the plaintiffs rested their case simply on their record title and the fact that the boundary lines of defendants' parcel were not readily deducible from the deed. This is insufficient to establish ouster as a matter of law. The presence of defendants' claim of title in the land records meant that actual and exclusive occupation of any part of the deeded premises carried with it constructive possession of the whole in the absence of any evidence to the contrary. This was our holding in the previous appeal of this case, 125 Vt. at page 365, 216 A.2d 41. See also *Hassam* v. *J. E. Safford Lumber Co., supra,* 82 Vt. at pages 449-450, 74 A. 197. It was not necessary for the defendants to be continually present on the land; only occupation consistent with the nature of the premises and its uses is required within the contemplation of the law. *Amey* v. *Hall,* 123 Vt. 62, 67-68, 181 A.2d 69; *Montgomery* v. *Branon, supra,* 125 Vt. at page 365, 216 A.2d 41. And there may be lapses of time between acts of possession. *Aldrich* v. *Griffith,* 66 Vt. 390, 401-403, 29 A. 376.

To sustain their action the plaintiffs must prove title both when their action is commenced and when it is tried. *Cheney* v. *Cheney,* 26 Vt. 606, 608. The findings and the uncontroverted evidence establish that title to the above-described area possessed by the defendants and their predecessors ripened before January 15, 1959, the date of the writ. Thus acquired, it is in all respects as perfect as

acquisition by grant; it has the same validity and force. *Weed* v. *Keenan,* 60 Vt. 74, 77, 13 A. 804.

As we have noted, the issue of adverse possession has been settled and is not here involved. The only matter for determination is the fixation of the boundary lines of the lot to which the defendants are entitled.

The court found that the warranty deed from Walter F. Scott to Alverton Baker and Michael C. Mulcahy dated May 24, 1927 provided that the grantees were to set cement posts at the four corners mentioned in the deed within a reasonable time but this was never done. However, this failure neither forfeits the deed nor adversely influences the establishment of the corners according to the evidence.

The description of the land in the defendants' deed and the former deeds does not permit the boundary lines to be precisely ascertained on the ground. The court failed to determine the bounds according to the calls of defendants' deed or from the undisputed evidence of occupation. Such evidence establishes that the area of occupation is larger than that found by the court.

However, the northeast corner of the area is established by the findings as "a pine tree located approximately twenty-nine feet from the west shore or westerly edge of Hinkum Pond, which tree bears or bore the legend S thereon." Although the call of the deed is for a marked tree "about twenty feet from the shore" there can be no doubt but that this pine tree represents the northeast corner. It is to be noted that the letter "S" has been partially or wholly chipped off the tree since the litigation began by the direction of plaintiff Burns. The finding that the pine tree establishes the northeast corner is amply supported by the evidence and must stand. From this point the finding arbitrarily fixes the boundaries without reference either to the deed or the uncontroverted evidence.

The three other corners in the call of the deed are not determined by the court and remain to be established. In that connection we would point to the evidence in the case which is undisputed. On the southerly side of the lot traffic flows to and from the Ramp road to the pond over an old road and represents the limits of southerly occupation. This would suggest that a southerly boundary of the lot would be somewhere along the southerly side of this old road from the Ramp road to the pond. There is no question of occupancy to the pond also

because of the path running diagonally to the northwest to the camp from the same terminus of the old road. The original deed calls for a lot line running approximately twenty feet from the shores of the pond to the marked pine tree fixed as the northeasterly corner. This boundary might well be found to commence at the intersection of the path from the camp at a point twenty feet from the shore line. In the northwest corner of the lot stands an outhouse which is and has been a point of natural traffic from the camp since about 1939. Obviously, even if the exact westerly line cannot be located according to the deed certainly the occupation ranges a reasonable distance to and beyond the outhouse. With the evidence uncontroverted and the occupancy demonstrated in the area, it would seem that the court would be able to construct lot lines suitable to surround the reasonable construction of the area involved or that boundary points could be agreed on since the geographical area is relatively well defined. The road on the southerly side, the terminal points of the path and roadway from the camp, the marked pine tree and the outhouse area suggests an oblong lot of fair dimension and easy recognition.

The description of defendants' tract of land contained in the challenged finding not being supported by the evidence the judgment on which it is based must be reversed.

*Judgment reversed and cause remanded.*

**Smith, J.,** took no part in the consideration of this appeal.