## The Laird Properties New England Land Syndicate v. Mad River Corporation

[305 A.2d 562]

No. 78-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 11, 1973

Motion for Reargument Denied May 21, 1973

*Adams & Meaker,* Waterbury, for Plaintiff.

*Theriault & Joslin,* Montpelier, for Defendant.

**Shangraw, C.J.** This action was commenced by the plaintiff (The Laird Properties of New England Land Syndicate) against the defendant (Mad River Corporation) by a petition to quiet title to a parcel of land in the Town of Fayston, Vermont, containing about three acres of land lying between State Highway No. 17, the so-called McCollough Turnpike, and a much larger tract of land owned by Laird.

The three acre parcel in controversy is located generally northerly of the McCullough Turnpike. This highway runs generally east and west between the Waitsfield-Fayston area in Washington County and the Starksboro-Bristol area in Addison County. Both parties have extensive real estate holdings in the area of the Turnpike.

The disputed area is somewhat shaped like a piece of pie with the point removed. The removal line is the southerly boundary of the property (and the northerly sideline of the Turnpike). It runs generally parallel to the center line of the Turnpike and some 50–75 feet northerly thereon. The north line of the property is generally parallel to the Turnpike center line and about 250 feet northerly thereof. The southwesterly boundary of the disputed area is an original lot line between the Cloud and McCullough lots, so-called. It is also part of the original line between Lot 13, Range 7, and Lot 14, Range 7, in the Town of Fayston.

The boundaries of the three acre parcel of land are not in dispute. The controversy concerns title, record or by adverse possession.

By way of conclusions the court determined, as a factual matter, that the record title to the premises in question was in the plaintiff. However, by invoking the rule of "tacking" it determined that the defendant acquired title to the three acre lot by adverse possession, citing *Montgomery* v. *Branon,* 127 Vt. 83, 238 A.2d 650 (1968), and *Hassam* v. *Safford,* 82 Vt. 444, 74 A. 197 (1909).

On April 24, 1972, a judgment order followed adjudging that the defendant had acquired title to the land in question by adverse possession, subject to a right of way in favor of

the plaintiff for logging purposes over the existing logging road. The plaintiff has appealed to this Court for review.

Title to the lot in question was conveyed to James H. McCullough and Ai A. McCullough by warranty deed of H. O. Ward, dated January 3, 1902. By deed of November 19, 1903, the McCulloughs conveyed to W. G. McAllister all the premises conveyed to them by H. O. Ward, with the exception of certain premises reserved and described in the McAllister deed.

The plaintiff claims title to the disputed three acre parcel of land through W. G. McAllister as part of the premises conveyed in the foregoing deed, from the McCulloughs. It proved a clear chain of title running back to McAllister.

The defendant, on the other hand, traces its record title through proven conveyances back to the McCulloughs on the theory that the disputed land was not conveyed to McAllister, but reserved. Record title, therefore, as between the parties, depends on whether the disputed area was conveyed, or reserved, in the McCullough-McAllister deed.

The description in the reserved parcel of land described in the McCulloughs' deed of November 19, 1903 to W. G. McAllister is not precise. By Finding No. 13, the court determined that the area in dispute was conveyed to McAllister by the McCulloughs and not reserved. By this finding the court determined that the record title to the three acre area in question "is in the plaintiff and not in the defendant".

The disputed land is contiguous with other extensive land owned by the plaintiff acquired by deed from Ward Lumber Company, Inc., dated December 20, 1968. Burton Ward and other members of the Ward family were predecessors in title of the Ward Lumber Company, Inc.

In general, these properties have always been wood, timber and forest lands and used as such. There are no buildings on the disputed area. The plaintiff and its predecessors in title own land north of the disputed area. There have been lumbering operations conducted on such land located north of the disputed area at various times by the plaintiff's predecessors. It is unclear whether trees were cut on the disputed area in these operations, but a few trees were cut by the plaintiff in a similar operation in 1970.

It was also found by the court that the "Ward Lumber Company, Inc., from 1938 on, maintained a logging road

through the disputed land over which it transported timber cut on its adjoining lands to the north."

By Finding No. 18, the court found that:

"Plaintiff and its predecessors have continuously used and occupied their large tracts contiguous to the disputed land on the north, to the extent that timberland is customarily used and occupied and have traversed the disputed area in connection with such use. They neither sought nor received permission for such traverse of the disputed land."

In 1936, James and Urea McCullough quitclaimed to the State of Vermont some 31.31 acres which in its description included the disputed area. In 1948, Vermont purported to convey the same land to the defendants, reserving a strip 100 feet wide, 50 feet on either side of center line of the McCullough Turnpike. Thus, this deed purported to convey a strip about 200 feet wide northerly of the Turnpike. However, the court found:

". . . that these conveyances did not serve to transfer record title to the disputed area to the defendant, since neither James and Urea McCullough, nor the State of Vermont, had such title at the times of their respective conveyances."

In 1968, to perfect its title to the portion of the Turnpike just southerly of the disputed area (the so-called "point of the pie"), the State negotiated for, and took a quitclaim deed from Ward Lumber Company, Inc. By Finding No. 21 the court determined that:

"None of the parties involved seem to have paid any particular attention to the disputed area prior to 1956. The defendant, although it evidently assumed it had acquired title from the State, did nothing whatever with the area. It did not use it for any purpose, fence it, or place on it any visible indications of its claimed ownership. [Ward Lumber Company, Inc.], not completely sure of all the boundaries of its extensive holdings, started

a 'comprehensive survey' of them, largely by the surveyor Paul Bigelow, beginning around 1953."

Continuing the findings, after taking its deed from the McCulloughs in 1936, the State of Vermont proceeded to construct a road along the center line which had been laid out in 1935. This center line was in the approximate, though not always the exact, center of the 500 foot wide strip conveyed by the McCulloughs and other grantors. One of the other landowners conveying the land to the State of Vermont for the purpose of accommodating the highway was Burton Ward.

At about the time of these transfers, Burton Ward, in the company of Alton Doe, who was handling property negotiations for the State, walked the highway center line in front of his property and the 31.31 acres deeded by the McCulloughs and including the disputed area. At no time did Mr. Ward state that he owned any of the property involved other than the tract which he was deeding to the State.

In 1956, the defendant, while staking out lots on the disputed area, contacted Owen Ward, then head of Ward Lumber Company, Inc., plaintiff's predecessor in title. At that time Mr. Ward made no claim of title to the disputed land. The first claim of title by Ward Lumber Company, Inc., was advanced shortly afterward, in September of 1956.

From its purchase in 1936, through completion of the road about 1939 and thereafter until its conveyance to the defendant in 1948, the court, by Finding No. 27, found that the State of Vermont was in open possession of the disputed area under a claim of right under its deed. It further determined that there was no interruption of such possession.

The court also found, by Finding No. 28, that the defendant, from the date it acquired the deed from the State of Vermont in 1948, has continued possession of the disputed area along with adjacent acreage included in its deed in a manner consistent with the general character of the property.

We continue with the substance of further findings of fact.

In the summer of 1956, the defendant caused several lots to be surveyed and staked in the vicinity of the disputed area. One full lot and a portion of another were within the disputed area. Lot no. 5, wholly within the area, was about to be sold to Peter Parker when the defendant learned that

Ward Lumber Company, Inc., was disputing its title. This lot was not conveyed. Defendant has done nothing in the disputed area since that time.

Ward Lumber Company, Inc., built a road through the area in question in 1956–1957 without seeking anyone's permission. Defendant made no objection and took no action to prevent Ward Lumber Company's use.

The court found that defendant appears to have paid taxes on the disputed area since its acquisition, although in just what amount cannot be determined. Up to until the last three or four years, the Fayston Grand List carried a property taxed to the defendant as "Land deeded by State 1948" in one lump assessment.

There are several trees along the northerly boundary of the disputed area which have been marked with red paint. They are marked on the north side of the trees in question. They were first noticed last fall and appear to have been there for some time previous. The court was unable to find from the evidence by whom the trees were so marked or when.

After constructing its road in 1957, a sign was placed thereon reading, "Please do not enter with vehicles. Thank you. Ward Lumber Co." Defendant did not disturb this sign. Nothing further in the way of resolving title appears to have been done until 1970 when plaintiff's attorney wrote defendant's attorney and then commenced this suit.

The findings, No. 35, recite that the defendant has conceded that if a decree should be entered for it in this suit, said decree may provide that the disputed area is subject to the right of the plaintiff to maintain a logging road for access to the highway. No reason for this concession was given.

Following the findings and by way of conclusions, the court stated:

> "As a factual matter, the Court has found that record title to the premises here in question is in the plaintiff. (*Cf.* Finding No. 13.)
>
> We are, however, disposed to adopt defendant's contention that it has acquired title to the premises here in question by adverse possession, using the rule of 'tacking' recognized in this jurisdiction. *Montgomery* v. *Branon*, 127 Vt. 83; *Hassam* v. *Safford*, 82 Vt. 444.

The requirement of 'unfurling the flag' (*Cf. Cavendish* v. *Barlow,* 120 Vt. 161, 165) was met when the State took its deed in 1936, recorded it, and proceeded to construct a highway.

The State's adverse possession continued until 1948 when it conveyed to defendant by a deed, duly recorded, which included in its description the disputed area. The type of possession carried on by the State continued by the defendant without interruption or any adverse claim being asserted until 1956, and it has continued without interruption since that time. The nature and condition of the premises, i.e., woodland, makes it unnecessary for the occupant to be on the premises at all times, and there was no competing actual occupation. We think this meets the general rules laid down in *Montgomery* v. *Branon, supra,* and in *Amey* v. *Hall,* 123 Vt. 62. See also 3 Am.Jur.2d *Adverse Possession* Sec. 8.

We are aided in this conclusion by the fact that defendant owns extensive acreage both sides of the disputed area, some of which is actually occupied by either itself or its grantees in an active manner. This parcel is only a small piece of extensive acreage, and to require an actual physical presence upon this small portion would render the whole doctrine of adverse possession impracticable of enforcement in rural, wooded areas.

The only factual ouster of the defendant by the plaintiff borne out by the evidence is its use of a right of way over the disputed area, under claim of right, and without interference. This is consistent with the defendant's concession that the plaintiff has a right of way over the disputed area even though such a finding could not be made on the evidence presented.

A judgment should issue, prepared by the attorney for the defendant under Rule 58, adjudging that the defendant has title acquired through adverse possession to the premises described in Finding No. 6, and pursuant to agreement thereto, that the plaintiff has a right of way for logging purposes over the existing logging road from its property northerly of the disputed area southerly to the highway. The judgment should also provide that defendant recover its taxable costs."

Our well recognized rule is that a possession that will work an ouster of the owner must be open, notorious, hostile and continuous for the full statutory period of fifteen years. *Cavendish* v. *Barlow,* 120 Vt. 161, 165, 136 A.2d 352 (1957). The tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest. *Barrell* v. *Renehan,* 114 Vt. 23, 29, 39 A.2d 330 (1944).

The whole doctrine of title by adverse possession rests upon the acquiscence of the owner in the hostile acts and claims of the person in possession. The ultimate element in the rise of a title through adverse possession is the acquiescence of the real owner in the exercise of an obvious, adverse, or hostile ownership through the statutory period. 3 Am.Jur.2d *Adverse Possession* § 8.

Based upon the doctrine of "tacking", the court below concluded that the defendant had acquired title to the premises in question by adverse possession. This doctrine is one which permits an adverse possessor to add his period of possession to that of a prior adverse possessor in order to establish a continuous possession for the statutory period. Thus, in order to come within the requirements as to continuity of possession, it is not necessary that an adverse possession should be maintained for the statutory period by one person. 3 Am.Jur.2d *Adverse Possession* § 58. This rule is in agreement with our Vermont decisions. *Montgomery* v. *Branon,* 127 Vt. 83, 87, 238 A.2d 650 (1968); *Hassam* v. *J.E. Safford Lumber Co.,* 82 Vt. 444, 450, 74 A. 197 (1909).

In the absence of proof to the contrary, the possession of land will be presumed to be with the legal title. *Holley* v. *Hawley,* 39 Vt. 525 (1867). There is a presumption that the use of land by one who has the legal title of record thereto is the exercise of his right to enjoy it. Such use, if in the exercise of the right of ownership, interrupts the continuity of adverse possession by another. *Barrell* v. *Renehan, supra,* 114 Vt. at 30–31.

 It is well established law that findings of fact must stand if there is any credible evidence fairly and reasonably supporting them. *Crawford* v. *Lumbermen's Mutual Casualty Co.*, 126 Vt. 12, 16, 220 A.2d 480 (1966). Although this Court has the power to set aside a finding of the lower court, we will not do so where the evidence is in conflict, merely because the evidence preponderates against it. *Little* v. *Little*, 124 Vt. 178, 182, 200 A.2d 276 (1964). Intervention on appeal is justified only when contrary proof so predominates the controversy that the record establishes no reasonable basis upon which the finding can stand. *Crawford* v. *Lumbermen's Mutual Casualty Co., supra.* It follows that if it appears from a review of the record that there is no evidence to support the court's findings, they may be set aside. *Montgomery* v. *Branon, supra,* 127 Vt. at 87.

 The issue of constructive possession has been briefed by both parties. The legal title draws to itself the constructive possession of the property. 3 Am.Jur.2d *Adverse Possession* § 51. In *Ralph* v. *Bayley,* 11 Vt. 521, 523 (1839), it is in effect stated that one with the best claim to land will not have his prior constructive possession disturbed by the subsequent constructive possession of another who has a poorer quality claim or title. See also *Davis* v. *White,* 27 Vt. 751, 754 (1855); *Hodges* v. *Eddy,* 38 Vt. 327, 346–47 (1865); and *Soule* v. *Barlow,* 49 Vt. 329, 341 (1877).

While the appropriate principle of law is stated or alluded to in the foregoing cases, 'none of them appear to square with the instant case on the facts. No Vermont case has been cited that is exactly in point. Cases from other jurisdictions disclose that the law will not permit such constructive possession as was exercised by Mad River to ripen into adverse possession because its constructive possession was commenced subsequent to a prior constructive possession under a good record title held by Laird and its predecessors.

 It is a general principle that the constructive possession of land is in the holder of the record title until there is an actual disseisin and expulsion, or actual hostile possession of another under a claim of title. 3 Am.Jur.2d *Adverse Possession* § 18.

This Court in *Montgomery* v. *Branon,* 125 Vt. 362, 365, 216 A.2d 41 (1965), said:

> "The presence of a claim of title in the land records meant that actual and exclusive occupation of any part of the deeded premises carried with it constructive possession of the whole absent any competing actual occupation. [Citation omitted.] The occupancy needed only to be that consistent with the nature of the premises, here . . . woodland."

▉ Here the plaintiff has record title together with occupancy of the disputed area by way of a road for logging purposes. It thereby had, at least, constructive possession of the disputed land excepting where there was actual occupancy asserted by the State along the location of the Turnpike.

In *Bostic* v. *Blanton,* 232 N.C. 441, 61 S.E.2d 443 (1950), that court subscribed to the law which holds that "constructive possession follows the superior title" and that the person who "has the better title has constructive possession of all land within the bounds of his deed *which is not in the actual adverse possession of another."* (Emphasis added.) To the same effect see *Smith* v. *Pittston Company,* 203 Va. 408, 124 S.E.2d 1, 5 (1962). In the Kentucky case of *Fletcher* v. *Bringardner Lumber Co., Inc.,* 249 S.W.2d 38 (Ky. 1952), the court said that title gives constructive possession and that there cannot be two hostile constructive possessions of the same land at the same time.

The conveyance of the disputed area to Mad River shows that the State of Vermont, at least as of the date of that conveyance, did not occupy or intend to actually possess or occupy the disputed area for any purpose.

▉ The defendant has burden of showing such acts of adverse possession as would vest in it legal title to the disputed tract of land, especially since it had no record title. Here, it is undertaking to assert by adverse possession against the plaintiff as the owner of the record title. The only occupancy by the State of Vermont during the period from 1936 until 1948 was that portion of the 31.31 acre tract used for highway purposes.

For logging purposes, plaintiff and its predecessors in title maintained a logging road across the disputed area. At no time did the State of Vermont exercise any dominion over this area by physical occupancy or otherwise. It did nothing whatever with this area or place on it any visible indications of its claimed ownership. Its only interest therein was for highway purposes.

The court found that the record title to the premises in question to be in the plaintiff. There is no finding that the defendant or its predecessor in title actually occupied the disputed area.

There is no evidence that the State of Vermont occupied or took into possession any of the disputed area or of any land outside the limits of the McCullough Turnpike. Only land used by the State of Vermont for highway purposes was subject to actual occupancy or possession.

However, the court concluded that due to the nature and condition of the disputed land, i.e., woodland, actual physical possession was not necessary. Mad River contends on appeal that under the factual situation presented by the record of this case, "actual possession of a part of the land constitutes constructive possession of the whole, and adverse possession runs to the whole tract."

But the law in this jurisdiction requires that the occupancy of the premises needed to give rise to constructive possession must be consistent with the nature of the premises. *Montgomery* v. *Branon, supra,* 125 Vt. at 365; *Amey* v. *Hall,* 123 Vt. 62, 67, 181 A.2d 69 (1962). See also 6 R. Powell, Real Property ¶1018 (rev. ed. P. Rohan 1972), where it is said at page 740:

> "[T]he ultimate fact to be proved is that the claimant has acted towards the land in question as would an average owner, taking properly into account the geophysical nature of this land."

The construction of the highway, in and of itself, on a purchase of the wooded lot, did not constitute occupancy of the entire lot as consistent with the nature of the premises. Compare *Spear* v. *Ralph,* 14 Vt. 400, 404 (1842). Such occupancy displayed for highway purposes no present or future

intent at that time to exercise dominion or ownership of any of the area lying outside that portion of the lot actually occupied by the State of Vermont. Therefore, since the State of Vermont at no time either actually or constructively occupied any portion of the land in question except that upon which the McCullough Turnpike was constructed, the doctrine of "tacking" cannot be applied to the area in controversy.

The findings and record, taken as a whole, fail to demonstrate that the defendant has successfully met the required burden of proof on the issue of adverse possession. The evidence to this effect falls short in substance.

The conclusion that the defendant gains title or right of possession by adverse possession is not supported by the findings. More particularly, the court found that the record title to the area in question is in the plaintiff, and that Ward Lumber Company, Inc., from 1938 on, maintained a logging road through the disputed land over which it transported timber cut on its adjoining land to the north; the plaintiff and its predecessors have traversed the disputed area in connection with the use of its property located northerly of the disputed area without permission having been received for such use of the disputed land; the State of Vermont did nothing whatever with the area in question; defendant and its predecessors in title did not use it for any purpose, fence it, or place on it any visible indications of its claimed ownership; and further in 1956–1957, Ward Lumber Company, Inc., built a road through the disputed area and erected a sign, "Please do not enter with vehicles. Thank you. Ward Lumber Co." without permission or objection on the part of the defendant.

In Finding Nos. 27 and 28, the court concluded that the State of Vermont was in possession of the disputed area from 1936 until 1948, and that thereafter the defendant has continued possession of the disputed area. Viewing the record as a whole, contrary proof predominates to such an extent that no reasonable basis is to be found upon which these findings can stand. The conclusion that the defendant has acquired title to the premises in question by adverse possession cannot be sustained.

The defendant has advanced considerable argument in its main brief on the subject of laches and equitable estoppel. Generally, circumstances which constitute laches involve questions of fact with the ultimate conclusion to be based thereon being a question of law. However, laches is so much a matter of discretion by the lower court that action by that court should not be disturbed unless clearly shown to be wrong. *Philbrick* v. *Johnson,* 91 Vt. 270, 277, 100 A. 110 (1917) ; *Page* v. *Cave,* 94 Vt. 306, 309–10, 111 A. 398 (1920).

The defendant made no requests in the lower court that the presiding judge make a finding or findings with respect to laches on the part of the plaintiff and none were made. It is our long standing rule that this court should not put the lower court in error when the latter was not afforded the opportunity of considering and acting upon the issue itself. It is clear that without requests for findings on the subject of laches and failure to act in that regard by the lower court, there was no opportunity for it to consider the question. *Gerety* v. *Poitras,* 126 Vt. 153, 154, 224 A.2d 919 (1966); *Grant* v. *Goodrich,* 109 Vt. 462, 466, 199 A. 246 (1938) ; *Wright* v. *Lindsay,* 92 Vt. 335, 338, 104 A. 148 (1918).

Laches also invokes prejudice, actual or implied, resulting not from the delay alone but from delay that works a disadvantage to another. *Wilder's Executor* v. *Wilder,* 82 Vt. 123, 128, 72 A. 203 (1909). Here there was no finding of prejudice working against the defendant nor of anything which was disadvantageous to it. Clearly, the claim of laches at this stage should be disregarded.

The defendant has urged in its brief that, by reason of the doctrine or theory of equitable estoppel, the appellant is estopped from asserting its title or claim to the disputed area. However, while so doing the defendant has overlooked one critical point of law which is that the party against whom the estoppel is to be effective "should be appraised of his rights, since silence without knowledge works no estoppel." 31 C.J.S. *Estoppel* § 88, at 495. At page 496, *Id.,* the following appears:

"Silence or failure to assert title to property while it is being adversely claimed or occupied is not, of itself, sufficient to create an estoppel. The omission to assert title must be with intent to deceive or with such culpable negligence as to amount to constructive fraud. The one claiming estoppel must have been without knowledge or the means of acquiring knowledge as to the true state of title."

The same general proposition and summary of the law appears in 28 Am.Jur.2d *Estoppel* §§ 92 and 93. At page 744, *Id.*, the following statement is found:

"It is generally necessary that the party alleged to be estopped had knowledge, either actual or constructive, of the nature and extent of his rights with respect to the property in question."

In the instant case there are no findings made by the lower court which would satisfy any of the foregoing requirements of equitable estoppel; the defendant made no requests on this issue. The question of estoppel was not presented to, nor determined by the lower court. The ultimate decision was not founded in whole or in part on this point. It is not for consideration here.

Confronted with plaintiff's record title to premises under consideration, the defendant has failed to sustain its burden of proof on the issue of adverse possession. We hold that the defendant should not have prevailed below. Plaintiff is entitled to the relief requested.

*The judgment order is reversed. The cause is remanded for the issuance below of a new judgment order in favor of the plaintiff consistent with the views expressed in this opinion.*