# Royal W. Jarvis v. Hubert Gillespie

[587 A.2d 981]

No. 89-529

Present: Allen, C.J., Gibson, Dooley and Morse, JJ.

Opinion Filed January 18, 1991

634

*Polow & Polow,* Hyde Park, for Plaintiff-Appellee.

*Molde & Black, P.C.,* Johnson, for Defendant-Appellant.

**Allen, C.J.** Defendant, grantee of a quitclaim deed from the Town of Waterville for a 1.2-acre parcel of land, contests the trial court's ruling that title to the parcel had previously passed from the Town of Waterville to plaintiff by way of adverse possession. We affirm.

The Town of Waterville acquired title to the parcel in 1935 from the administrator of the estate of the then owner. In 1932, the owner had mortgaged the parcel to the Town in order to receive public assistance.[1] The Town provided support for the owner until his death, after which the administrator of the owner's estate deeded the parcel over to the Town.

In 1947, plaintiff purchased over 200 acres of land which surround the disputed parcel on three sides. The fourth side of the parcel is bounded by a road.

On May 7, 1986, the Town of Waterville, by quitclaim deed, conveyed the disputed parcel to defendant. Shortly thereafter, defendant went to the property and removed "No Trespassing" signs which plaintiff had posted on the property. Plaintiff replaced the signs and built a wooden fence on the property.

On February 24, 1988, plaintiff filed a declaratory judgment action to establish his ownership of the disputed parcel by way of adverse possession or, in the alternative, to obtain a prescriptive easement over a roadway which crosses the parcel. Defendant contested the action by denying plaintiff's claims and by asserting as an affirmative defense that plaintiff could not gain

---

[1] The welfare laws in effect in 1932 read, in part:

> **Sec. 4215. Duties of towns.** A town shall relieve and support poor and indigent persons residing or found therein, when they are in need thereof, as provided in this chapter.
>
> . . . .
>
> **Sec. 4224. Recovery from estate of pauper.** Upon the death of a property owner who has been assisted by a town under the provisions of this chapter, such town may recover against his estate the amount it has expended for such assistance, in an action of contract, on this statute, in the name of such town.

Gen. Laws of 1917, §§ 4215, 4224 (most recent version of § 4215 was 33 V.S.A. § 702 (repealed by 1967, No. 147 (Bien. Sess.), § 53(b)) and most recent version of § 4224 was 33 V.S.A. § 991 (repealed by 1977, No. 147 (Adj. Sess.), § 1)).

title to, nor a prescriptive easement over, the parcel because lands given to a public use are exempted from adverse possession claims by 12 V.S.A. § 462.

The trial court found that at various times between the years 1947 and 1986 plaintiff had used the land for a variety of purposes, such as grazing cattle and horses, parking vehicles, as a staging area for a logging operation on surrounding property, and to store slab wood from a sawmill which was located on adjacent property. The court also found that during that period plaintiff, at various times, maintained a fence on the roadside boundary of the parcel, tapped maple trees on the parcel, planted trees on the parcel, cut Christmas trees and firewood from the parcel, posted "No Trespassing" signs on the parcel, and built a loading ramp on the parcel for the logging operation which remained in use to load and unload his tractor after the logging operation ceased. The court found that these uses were clearly visible from the road which abutted the parcel. Further, the court found that plaintiff was the only person to make use of the property for any reason during the period and that neither the Town of Waterville nor the public made any use of the parcel during that time.

From these facts, the court concluded that plaintiff had established title to the property by adverse possession. The court further concluded that the exemption provided in 12 V.S.A. § 462 did not apply in this instance because the property was not given to a public use. Defendant then brought this appeal contesting both of these conclusions.

## I.

We first address defendant's assertion that the trial court's findings numbered 17, 19, 20, 21, 22, 23, and 30 are clearly erroneous.[2]

---

[2] The pertinent findings read:

> 17. Between the years 1951 and 1961, Plaintiff tapped several maple trees on the disputed parcel in connection with his sugaring operation. The tapping of the maple trees was visible to the public in the early spring of each of those years.
>
> 19. In the late 1940s, Plaintiff planted twenty-five to thirty trees on the disputed parcel.

■■ When reviewing the factual findings of a trial court, this Court will view them in the light most favorable to the prevailing party below, disregarding the effect of modifying evidence, and will not set aside the findings unless they are clearly erroneous. *Brown v. Whitcomb*, 150 Vt. 106, 109, 550 A.2d 1, 3 (1988); V.R.C.P. 52(a). The findings will stand if there is any reasonable and credible evidence to support them. *Harlow v. Miller*, 147 Vt. 480, 481–82, 520 A.2d 995, 997 (1986).

A review of the record discloses sufficient evidence to support findings 17, 19, and 23, and, therefore, they will not be set aside. Also, defendant's challenge to finding 30 is directed at the conclusion the trial court drew from the finding and not at the substance of the finding itself. Therefore, the substance of this finding stands.

Defendant's challenge to findings 20, 21, and 22 have merit. Findings 20, 21, and 22 are clearly erroneous as to the dates specified therein. There is no evidence to support a finding that the uses mentioned in finding 20 started in the mid-1950s. Those uses started in 1965. Therefore, findings 20 and 21 are erroneous as to the period of the mid-1950s to 1965. Also, there is no support for finding that plaintiff conducted a logging operation in 1973, as is stated in finding 23. The evidence clearly shows that the logging operation took place in 1971 and 1972. Therefore, finding 23 is erroneous as to the year 1973.

---

20. From the mid 1950s until 1972, Plaintiff used the disputed parcel to cut Christmas trees and firewood, to load logs, to drive his tractor on and off, and to park his vehicles. He also constructed a loading ramp on the parcel.

21. Plaintiff utilized the premises each and every year from the mid 1950s to 1972 for one of the uses noted above. [T]he Plaintiff's use of the parcel was visible to the public.

22. In 1972 and 1973, the disputed parcel was used as a staging area for a logging operation. This logging operation was not conducted personally by Plaintiff but was undertaken by a person hired by Plaintiff.

23. From 1974 through 1982, Plaintiff cut firewood from the logs left on the land by the men conducting the logging operation, parked his vehicles on the disputed parcel, used the loading ramp for loading and unloading his tractor while working in the woods and continued to act and consider the disputed parcel to be his own.

30. At all times during the period from 1947 to 1986, Plaintiff was the exclusive person to utilize the disputed parcel. Plaintiff used the disputed parcel consistent with a rural and agricultural purpose, which was seasonal in nature.

■ These errors, though, are harmless. The errors in findings 21 and 22 concern only the period from the mid-1950s to 1965. This period is not crucial because, as will be discussed below, plaintiff's possession from 1965 to 1986 was sufficient to establish title. See *infra* note 3 and accompanying text. The error in finding 23 concerns only the logging operation in 1973 which is unessential because there were other activities on the property in 1973. Therefore, because the errors concern only unessential findings, they do not provide a basis for reversal. See *Tetreault v. Tetreault*, 148 Vt. 448, 453, 535 A.2d 779, 782 (1987) (unessential findings do not provide grounds for reversal even when such findings are incorrect).

## II.

■■ Defendant next contends that the trial court erred in finding that plaintiff had established all the elements necessary to gain title to the parcel by adverse possession. One acquires title by adverse possession through "'open, notorious, hostile and continuous' possession of another's property for a period of fifteen years." *Moran v. Byrne*, 149 Vt. 353, 355, 543 A.2d 262, 263 (1988) (quoting *Laird Properties New England Land Syndicate v. Mad River Corp.*, 131 Vt. 268, 277, 305 A.2d 562, 567 (1973)). The claimant has the burden of establishing all of these elements. *Laird*, 131 Vt. at 279, 305 A.2d at 569.

■ Defendant argues that except for the logging operation in 1971 and 1972 and storing the slab wood in 1983 and 1984, none of plaintiff's uses of the parcel constituted sufficient possession to establish adverse possession. Defendant relies on case law asserting that certain acts, such as tapping trees or cutting timber, by themselves are insufficient to establish possession. See *Caskey v. Lewis*, 54 Ky. (15 B. Mon.) 27, 32 (1854) (occasional use for sugaring and cutting timber and firewood did not constitute possession); *Adams v. Robinson*, 6 Pa. 271, 272 (1847) (annual use of land as a sugar camp constituted a succession of trespasses rather than occupancy). Such a general proposition, however, is not conclusive of the particular controversy before us. "The ultimate fact to be proved in an adverse possession case is that the claimant has acted toward the land in question as would an average owner, taking properly into ac-

count the geophysical nature of the land." 7 R. Powell, The Law of Real Property ¶ 1013[2][h], at 91–62 (1990); see *Laird,* 131 Vt. at 280, 305 A.2d at 569 (acts needed to give rise to constructive possession must be consistent with the nature of the property). Thus, although certain of the acts of possession taken by a claimant may not be sufficient to establish possession in all circumstances, each case must be examined individually, viewing the claimant's acts in light of the nature of the land.

In this case, the land is a 1.2-acre parcel surrounded on three sides by 280 acres of plaintiff's land and bounded on the fourth side by a road. The area in which it is located is rural and agricultural in nature. In 1947 there were no buildings on the property and there had not been any for many years. Grazing cattle and horses, cutting hay, planting and tapping trees, and cutting firewood and Christmas trees are the types of acts which are consistent with the nature of the parcel.

■ Defendant contends, however, that these acts are not the uses an average owner would have made of the parcel. He argues that because at one point before 1947 there had been a house on the parcel, because the parcel is flat, open, dry and well drained, because more trees could have been planted on it, and because defendant plans to build a house upon it, plaintiff did not use the parcel as an average owner might. We do not agree. Simply because a parcel may be susceptible to uses other than those to which the claimant chose to put it does not necessarily lead to the conclusion that the claimant failed to act toward the parcel as an average owner would have. "'The possession is gauged by the actual state of the land, and not with reference to its capability of being changed into another state which would reasonably admit of a different character of possession.'" *Bergen v. Dixon,* 527 So. 2d 1274, 1278 (Ala. 1988) (quoting *Goodson v. Brothers,* 111 Ala. 589, 595, 20 So. 443, 445 (1896)). Plaintiff used the parcel for purposes which were consistent with its condition as he found it. He was not required to change nor necessarily improve the land, but was merely required to perform acts of possession which were consistent with the parcel's nature. Plaintiff's acts, while not necessarily sufficient to constitute possession of every piece of land, were sufficient to establish his possession of this parcel of rural, agricultural land.

■ Defendant argues that plaintiff also failed to establish a continuous fifteen-year period of possession. One basis of the argument is that plaintiff failed to establish the exact date in 1971 on which the loading ramp was constructed on the parcel. This is significant because of defendant's entry on the land in May 1986, which, defendant contends, effectively interrupted plaintiff's possession. This contention ignores the fact that plaintiff's claim predates 1971.

Another basis for the argument raised by defendant is that the acts of possession were merely fragmentary and occasional.

> "To constitute continuous possession of lands, the law does not require the occupant to be present on the site at all times. The kind and frequency of the acts of occupancy, necessary to constitute continuing possession, are dependent on the nature and condition of the premises as well as the uses to which it is adapted."

There may be lapses of time between acts of possession. *Montgomery v. Branon*, 129 Vt. 379, 386, 278 A.2d 744, 748 (1971) (quoting *Amey v. Hall*, 123 Vt. 62, 67, 181 A.2d 69, 73 (1962)).

The uses made of the parcel from 1965 until 1986[3] consisted of cutting firewood and Christmas trees, parking vehicles, staging the logging operation, building the loading ramp, loading and unloading a tractor using the ramp, storing slab wood, cutting brush, and posting "No Trespassing" signs. Further, plaintiff testified that although there were times when he had not been on the parcel for as long as a month, he was never absent for as long as a year.

■ This Court has held that using property only at certain times of the year for certain activities and not using it for the rest of the year can constitute sufficiently continuous use for adverse possession. *Thibault v. Vartuli*, 143 Vt. 178, 181, 465 A.2d 248, 250 (1983) (using island only in summer for recre-

---

[3] We do not address the period predating 1965 because the correction of findings 20 and 21 present a period from the Spring of 1961 until 1965 for which there are no findings. Because there is a sufficient period after this in which plaintiff could establish title, we do not address the significance or lack of significance of this period.

ational activities); *Montgomery*, 129 Vt. at 386, 278 A.2d at 748 (using hunting camp only during season); *Amey*, 123 Vt. at 67–68, 181 A.2d at 73 (using logging camp only during cutting times). Although plaintiff did not use the parcel constantly, he used it each year during certain seasons in ways which were both consistent with the season and with the nature of the parcel. The uses, therefore, were more than fragmentary and occasional, and were sufficiently continuous. Thus, plaintiff established a continuous period of use from 1965 until 1986, which is more than sufficient to satisfy the statutory requirement of fifteen years.

Defendant also contends that plaintiff's acts were not open and notorious. Acts of possession are deemed sufficiently open and notorious if they are conducted in a manner which would put a person of ordinary prudence on notice of the claim. *Waterman v. Moody*, 92 Vt. 218, 238–39, 103 A. 325, 334 (1918). As the parcel bordered on the road, anyone passing would have been able to see plaintiff's activities. Further, there was testimony from a former town lister and from the town clerk, who had worked in the town clerk's office since 1939, that they both knew that plaintiff claimed to own the parcel. There was no error in finding plaintiff's possession to be open and notorious.

Lastly, defendant argues that the plaintiff's acts were not hostile because they "were beneficial to the Town." Hostility, when used in the context of adverse possession, does not require the presence of ill will toward the actual owner nor destructiveness toward the land. *Grubb v. State*, 433 N.W.2d 915, 918 (Minn. Ct. App. 1988); *Sinicropi v. Town of Indian Lake*, 148 A.D.2d 799, 800, 538 N.Y.S.2d 380, 381 (1989); 7 R. Powell, The Law of Real Property ¶ 1013[2][c], at 91–23 to 91–26 (1990). Rather, what is required is that the adverse possessor intends to claim the land and treat it as his own. *Lathrop v. Levarn*, 83 Vt. 1, 4, 74 A. 331, 331–32 (1909). The trial court properly found that plaintiff's claim was hostile.

### III.

Defendant argues that while the parcel was owned by the Town of Waterville it was exempt from adverse possession claims by 12 V.S.A. § 462. The statute reads: "Nothing con-

tained in this chapter [relating to the limitations of actions] shall extend to lands given, granted, sequestered or appropriated to a public, pious or charitable use, or to lands belonging to the state." 12 V.S.A. § 462. While we have applied the statute in the past, we have yet to face the issue presented by this case, namely, how to determine whether property owned by a municipality is "given, granted, sequestered or appropriated to a public . . . use."

Defendant urges that the proper focus of such an inquiry is whether the Town was acting in its "governmental capacity" or its "proprietary capacity" when it acquired the property. The significance of this distinction, defendant contends, is that land which is acquired or held by a municipality in its governmental capacity is within the meaning of the statutory phrase "given . . . to a public . . . use." We do not find this argument persuasive.

Other jurisdictions which have faced the question are split. New Hampshire, for example, in applying N.H. Rev. Stat. Ann. § 477:34 (1983), which reads "[n]o person shall acquire by prescription a right to . . . any public ground by . . . occupying it adversely for any length of time," has held that "'mere retention of title, without more,'" is a public use for lands owned by a municipality. *Kellison v. McIsaac*, 131 N.H. 675, 681, 559 A.2d 834, 837 (1989) (quoting *McInnis v. Town of Hampton*, 112 N.H. 57, 60, 288 A.2d 691, 694 (1972)). This, in essence, exempts all municipal lands from adverse possession claims. This standard, however, is in conflict with our statute which only exempts lands given to a "public, pious, or charitable use." Our statute does not provide a blanket exemption for municipally owned lands, which it easily could have, as evidenced by the provision exempting state-owned land. Therefore, we decline to follow New Hampshire's example.

We find the approach of the Supreme Court of Connecticut to be more in accord with our statute. In *American Trading Real Estate Properties, Inc. v. Town of Trumbull*, 215 Conn. 68, 574 A.2d 796 (1990), the court held that land which is owned by a municipality is presumed to be given to a public use. *Id.* at 80, 574 A.2d at 802. However, this presumption can be rebutted by demonstrating that the town has abandoned any plans for the land. *Id.* Evidence to be considered in determining

this issue may include the reason the property was acquired by the town, uses the town has made of the property since acquisition, and whether the town has manifested an intention to use the property in the future.

This standard is a simple, balanced approach for determining which municipal lands are given to a public use and thereby exempt from claims of adverse possession. It allows a municipality to be protected from adverse possession claims on property which it is not using at present but may have future plans for or on property which it has set aside as open space or to be left in its natural state for the benefit of the community and the environment. It does not, however, clash with 12 V.S.A. § 462 by giving a town a blanket exemption to adverse possession claims. It provides only for a presumption that the property is given to a public use which can be rebutted by evidence to the contrary.

In *American Trading*, the court reviewed an older Connecticut case which found that a piece of property could be adversely possessed although it was owned by a municipality because it was not given to a public use. *Id.* at 81, 574 A.2d at 802 (examining *Goldman v. Quadrato*, 142 Conn. 398, 114 A.2d 687 (1955)). *Goldman* involved a claim of adverse possession against a piece of property which a city had acquired by tax foreclosure. *Goldman*, 142 Conn. at 400, 114 A.2d at 689. The city then did nothing with the property for twenty-four years until it conveyed it to a private individual. *Id.* The *American Trading* court found that *Goldman* was in accord with the rebuttable-presumption standard because the city acquired the property only to protect its fisc from a delinquent taxpayer, because the city never used the property for any reason, and because the city, by selling the property to a private individual, manifested "no intention to develop the property, then or later, for any public purpose whatsoever." *American Trading*, 215 Conn. at 81, 574 A.2d at 802.

The facts of the case at hand are very similar to those of *Goldman*. The Town of Waterville acquired the parcel in 1935 as settlement for the support it had provided for the owner. The Town then did nothing with the parcel for fifty-one years. Finally, in 1986, the Town conveyed the property to defendant by quitclaim deed.

Based on these facts, we find that plaintiff has carried his burden of rebutting the presumption that the parcel,

while owned by the Town of Waterville, was given to a public use. The Town acquired the parcel as settlement of a debt, the parcel was not used by the public while the Town had title, and by conveying the parcel to defendant, a private individual, the Town manifested that it had no intention of ever using the parcel for a public use. Therefore, the trial court properly concluded that the parcel was not given to a public use and that it was not exempt from claims of adverse possession by 12 V.S.A. § 462.

*Affirmed.*