Filed 01/22/26

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-04159

| Damian Renzello v. Mark Browning et al |
| --- |

## ENTRY REGARDING MOTION

Title:      Motion for Summary Judgment  (Motion: 4)
Filer:      Jon D. Valsangiacomo
Filed Date:   November 24, 2025

The motion is GRANTED.

This is a dispute concerning ownership of land and premises located at 1325 Vt. Route 14 in East Montpelier, Vermont. Defendants, who are the owners of record for the property, seek summary judgment on Plaintiff's ownership claims. The undisputed facts demonstrate that Plaintiff's title and adverse possession claims fail as a matter of undisputed fact and law. Due, however, to the nature of Plaintiff's implied equitable claims, Defendants are not entitled to final judgment and there remain disputed facts for which a trial and fact finding remain necessary on the issue of unjust enrichment.

***Undisputed Material Facts***

Based on the parties' filings and exhibits, the following facts are undisputed. In August 2000, Patricia Renzello purchased land and premises, including a mobile home located at 1325 Vt. Route 14 in East Montpelier, Vermont.[1] Ms. Renzello was the mother of Plaintiff Damian Renzello and the late Luellen McDonagh, whose real estate trust is the current Defendant. At the time of her purchase, Ms. Renzello and Damian Renzello moved onto the property and began living there. In November 2001, Ms. Renzello deeded her interests in the property to her daughter, Luellen McDonaugh through a warranty deed. This transfer included all land and premises, including the mobile home. Ms. Renzello did not reserve any rights or otherwise qualify the transfer, and there are no documents supporting either a contemporary agreement or

---

[1] Damian Renzello contends that his savings and work that went into his mother's prior home contributed to the resulting profit that she realized in the sale of that property and funded, in part, the purchase of the Route 14 property. It is not contested that the property was put entirely into Ms. Renzello's name and that Damian Renzello was not listed on any of the deeds or closing documents.

other intent to preserve title or a portion thereof in Ms. Renzello or vest any rights with Damian Renzello.[2]

After this transfer, Ms. Renzello and Damian Renzello continued to live in the mobile home without objection from Ms. McDonagh. No formal lease or agreement was ever drafted or signed. Shortly after the transfer, Ms. McDonagh began constructing a house on the property where she began to live and occupy as her primary residence. The McDonaghs and the Renzellos continued to occupy the property by consent for the next 14 years without incident, complaint, or objection.

In October 2016, Ms. McDonaugh, who was suffering from terminal cancer, transferred the property through a deed to the Luellen McDonagh Real Estate Trust, of which her daughter, Quinn McDonagh was and remains trustee. Shortly after this transfer, Ms. McDonagh passed away from her illness.[3]

Following her mother's passing, Quinn McDonagh and her partner, Mark Browning, began living at the property in Ms. McDonagh's house. Ms. Renzello and Damian Renzello continued to live in the mobile home. In March 2017, an estate was open for Ms. McDonagh. On August 2, 2017, Ms. Renzello filed a claim with the Estate in the amount of $90,000 based on the claim that Ms. McDonagh owed Ms. Renzello for the transfer of the property. Ms. Renzello claimed an interest in the property. March 26, 2018, George Belcher, the Administrator for the Estate, denied the claim and sought it to be dismissed. *In re Estate of Luellen McDonagh*, Dckt.

---

[2] Plaintiff Damian Renzello claims that this transfer was done for the purpose of allowing Ms. McDonaugh to develop a portion of the property while retaining a portion for Ms. Renzello, but there is no credible evidence to support this contention. The deed does not have any reservation, there was no subdivision application, and there are no contemporary agreements or other writings that would demonstrate that Ms. Renzello's transfer was anything other than a complete transfer of title. For purposes of summary judgment, a party opposing must support their allegations with specific facts sufficient to create a genuine issue of material fact. *Samplid Enterp., Inc. v. First Vt. Bank*, 165 Vt. 22, 25 (1998).

[3] Plaintiff Renzello contends that this transfer was the result of coercion or undue influence, but he presents no evidence or testimony in support of this theory apart from the fact that Ms. McDonagh was taking medication at the time of the transfer, and her signature was shaky. These facts do not give rise to a claim of coercion or undue influence as neither taking medication, nor having a shaky signature while ill provide evidence of Ms. McDonagh's mental state. As such, these facts alone do not give rise to a dispute of material fact concerning the transfer. *Boyd v. State*, 2022 VT 12, ¶ 19. Moreover, even if Plaintiff could establish undue influence in this transfer, the alternative is the Defendant would effectively have taken the property as Ms. McDonagh's heir. 14 V.S.A. § 314. In neither case would the property pass to Plaintiff Renzello either by function of the Trust or by Vermont's probate laws of intestacy.

No. 185-3-17 Wnpr. Ms. Renzello did not respond to this objection, and on April 11, 2018, the Probate Division of the Washington County Superior Court rejected and barred Ms. Renzello's claim. Id. Ms. Renzello passed away around 2022 at age 88.[4]

At all relevant times, Damian Renzello has lived and continues to live in the mobile home on the property as his primary residence. There is no evidence that either Ms. McDonagh or Quinn McDonagh has ever objected to his use and occupancy of the property as his residence prior to the current eviction proceedings that were filed around the same time as the present action. While there is evidence that the McDonaghs intended to permit Ms. Renzello to live for the rest of her life at the property, there is no evidence that this offer extended to Damian Renzello or that any promise or representation was made to him.

There is evidence that Damian Renzello has made repeated claims partial ownership of the property since Ms. McDonagh's 2016 death. These claims have varied, but they consistently included the following allegations: (1) that there was a deal for Ms. McDonagh and Ms. Renzello to be co-owners of the property and for Damian Renzello to take an ownership interest from this relationship; (2) the allegation that Ms. McDonagh did not compensate Ms. Renzello for the property and that Damian Renzello contributed substantial funds to the purchase of the property; and (3) that Damian Renzello owns the mobile home and garage. There is no evidence that apart from these letters and the present lawsuit that Damian Renzello has acted to prevent either Ms. McDonagh or her successors from access the property or taken an action adverse to their claim of title.

### Standard of Review

Vermont Rule of Civil Procedure 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment to as a matter of law." V.R.C.P. 56(a). See *Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112; *Gilman v. Maine Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 7, 175 Vt. 554. The moving party must support its assertion with numbered paragraphs with references to materials in the record. V.R.C.P. 56(c)(1). The nonmoving party must show that the material facts are in dispute. *Boyd v. State*, 2022 VT 12, ¶ 19, 216 Vt. 272. The nonmoving

---

[4] In Plaintiff's answer filed on November 22, 2024, to the complaint in the companion case to this one (Docket no. 24-CV-4496), he states "I didn't live with my Mom, she lived with me, I took good care of her for so many years, she died a couple of years ago at age 88."

3

party does this through introducing their own admissible evidence. *Gross*, 2018 VT 80, ¶ 8. Additionally, the court gives the nonmoving party the benefit of reasonable doubts and inferences. *Brousseau v. Brousseau*, 2007 VT 77, 182 Vt. 533. If the court determines there are no genuine issues of material fact, the court will grant summary judgment. V.R.C.P. 56.

### *Legal Analysis I: Damian Renzello's Claim of Title*

The undisputed facts of this matter demonstrate that Damian Renzello does not presently and has never had legal title to the property located at 1325 Vt. Route 14. Under Vermont law, land is conveyed through deeds executed by the person duly authorized to convey and recorded in the land records. 27 V.S.A. § 301. Oral agreements are not valid to either transfer or create legal interests in real estate. 27 V.S.A. § 302. Lawyers refer to this concept as the "statute of frauds," and it is a long-standing principle in the law that real estate may not be conveyed, and interests may not be created by "handshake deals" or oral understandings. *Couture v. Lowery*, 122 Vt. 239, 243–44 (1961). These rules were adopted to prevent precisely the type of issue that Plaintiff seeks to raise here, which is to testify to some type of oral agreement or understandings between himself and two deceased individuals, which were never turned into writing, and that would run contrary to the past 26 years of the well-established chain of title that has never vested title in him. Id. (noting that the Statute of Frauds was adopted to prevent existing ownership to be upset by "parol evidence").

While courts have carved out limited exceptions to Section 302, none of those apply in this case. See *Quenneville v. Buttolph*, 2003 VT 82, ¶ 18 (allowing an oral agreement to stand where one party has acted in reliance upon and completed part performance of the transfer agreement); *Bassler v. Bassler*, 156 Vt. 353, 358 (1991) (allowing oral agreements where there is evidence of part performance and reliance on the terms of the agreement). In no case that the Court has found is there a right for an individual to claim title to the property that was never deeded to him, never sought to be deeded to him, and for which there is no evidence that the parties expressed—through writing or action—an intent to deed the property to him.[5]

---

[5] This is the key difference here between the present case and *Quenneville* and *Bassler*. Even taking the evidence in a light most favorable to Plaintiff, there is no evidence that there was an agreement to ever vest title in Plaintiff.

For these reasons, the Court finds that Plaintiff has no claim of title or ownership over the 1325 Vt. Route 14 property, and that Defendants are entitled to Summary Judgment on this issue of legal ownership.

### Legal Analysis II: Adverse Possession

In the alternative, Plaintiff makes an argument that he is entitled to a claim of ownership through the doctrine of adverse possession. The law of adverse possession states that a party may claim title to property if they can show that they used and occupied the land in an "open, notorious, hostile, and continuous manner" for 15 years or more. *First Congregational Church of Enosburg v. Manley*, 2008 VT 9, ¶ 13. A party asserting adverse possession has the burden of establishing all five elements of the claim. *Jarvis v. Gillespie*, 155 Vt. 633, 638 (1991).

The first two elements of open and notorious use must arise either through a claim of title or under a claim of right. *First Congregational Church of Enosburg*, 2008 VT 9, at ¶ 13; see also *Community Feed Store, Inc. v. Northeastern Culvert Corp.*, 151 Vt. 152, 156 (1989). The purpose of these two elements is that a party claiming adverse possession must assert their right to the property in an open manner and give notice to others that they are asserting a claim of ownership. *Jarvis*, 155 Vt. at 641. In this case, there is no evidence asserted that Plaintiff asserted his claim in any manner prior to 2017. Plaintiff's evidence is that he had an understanding that he would get a portion of the property, but this expectation was not memorialized in any documents or any actions. It was not put into the land records or given any memorialization that would constitute a claim of title.

The evidence also suggests that no claim of right was asserted until 2017, after Ms. McDonagh's passing. At that time, Plaintiff began making demands to Quinn McDonagh, asserting for the first time a claim of ownership. Before theses 2016, there is no evidence of an open and notorious action or document that would establish or create an issue of fact to show Plaintiff had a claim to the property that would contravene the deeded land rights that Plaintiff's mother had conveyed to Ms. McDonagh in 2001. As a result, Plaintiff's adverse possession claim must fail as a matter of law for lack of evidence of any open and notorious actions to assert a claim of ownership for a continuous period of 15 years.

While this lack of evidence of 15 years of an open and notorious claim to the land is sufficient to demonstrate that Defendants are entitled to summary judgment on Plaintiff's adverse possession claim, the Court finds that the element of hostility is not met under the

5

current facts presented by the parties. The element of hostility requires a party claiming adverse possession to show that his or her use and possession was exclusive and not merely permissive. *Lawrence v. Pelletier*, 154 Vt. 29, 33 (1990). In this case, the Court looks to the controlling deeds, which gave Ms. McDonagh, and later her trust, title to the property. From this title, the law gives constructive possession of the land to the record owners. *Laird Properties New England Syndicate v. Mad River Corp.*, 131 Vt. 268, 278 (1973). Such possession continues until such a time as the owners are expelled from the property or another individual plants his or her flag of ownership through a separate claim which is at odds with the owners' claim of title and possession. Id. In this case, there is no evidence that Plaintiff ever attempted, prior to this lawsuit, to remove Defendants from the property or act as an exclusive owner in a manner that was hostile to Defendants.[6] At best, Plaintiff can show that he occupied the property in a continuous manner, but he cannot show that his claim of ownership was adverse to Defendants or demonstrated the conflicting claims of open, notorious, and hostile ownership for 15 years that would defeat Defendant's written title and both the constructive and actual ownership that they have exercised over the property.

The reason for this standard is that adverse possession is a doctrine that vests title in an individual who acts as the primary and exclusive owner of a property, either by virtue of a claim of title or claim of right for 15 continuous years. Individuals who reside on property without asserting a claim of ownership or who fail to treat their claim as exclusive or controlling claim of ownership cannot, as a matter of law, establish adverse possession.

The evidence in this case fall short of the standard. Plaintiff never held title to the property. He is not in the chain of title. He does not claim to have received a deed or other document that would grant him an interest in the property from either Ms. Renzello or Ms. McDonagh. Plaintiff's occupancy of the property has not been hostile or exclusive to Defendant's occupancy of the property, and there is no evidence that he has acted against any implied or express permission by Defendants or their predecessors in title to live in the trailer home on the property. This permission cannot, as a matter of law, constitute the type of adverse

---

[6] The closest that Plaintiff comes to demonstrating hostility outside of the present lawsuit is the effort that Plaintiff's mother made to claim to the property in 2017 as part of Ms. McDonagh's probate estate. This claim, however, was rejected by both the Administrator and the Probate Court. It was not appealed and did not alter Defendant's constructive or actual occupancy and possession of the property.

or hostile actions that would demonstrate or effectuate an independent claim of ownership, and there is no evidence of ongoing hostile actions for 15 years or more.

For these reasons, and taking the record in a light most favorable to Plaintiff, the Court finds no facts that would support a claim of adverse possession, and Defendants are entitled to judgment as a matter of law on this issue.

### Legal Analysis III: Unjust Enrichment

Much of Plaintiff's case, apart from his claims of ownership, revolves around the claims of contributions that Plaintiff alleges he made in both the purchase of the property and in its on-going maintenance. While Plaintiff, a self-represented party, has not plead the precise claim of unjust enrichment, his pleadings and filings are filed with references to the claim of inherent unfairness that his ownership expectations are being challenged and thwarted based on the failure of his ownership claims and expectations. The Court understands such language to constitute a claim for unjust enrichment, which the Court will allow.

Under Section 27 of the Restatement (Third) of Restitution, a party may be entitled to restitution payments to avoid unjust enrichment when the party "makes expenditures to maintain, improve, or add value to property that the [party] reasonably expects to retain or acquire," but does not, which leads another person to become "the unintended beneficiary of the claimant's expenditure." Restatement (Third) of Restitution § 27. This appears to be precisely what Plaintiff is claiming in the present case.

Given the Court's ruling that Plaintiff's claims of ownership either by legal title or adverse possession fail as a matter of law, the unjust enrichment claim is ripe for consideration and adjudication. Since neither party has briefed the issue or sought to assemble the facts involved, which may require additional discovery, the Court will set this matter for a status conference to discuss the parties' discovery needs and possible trial readiness.

As a point of clarification, however, the Court's allowance of unjust enrichment claims are limited to monetary damages. Plaintiff's bid to either prevent his removal from the property or dictate who may use the property was premised on establishing a claim of ownership. This decision has determined that such claims fail as a matter of law. Therefore, Plaintiff has no right to occupy the property based on any theory of ownership. His right to continue to occupy the property is a function of eviction law. Due to this determination, the Court will also consider consolidation with the accompanying eviction docket as Plaintiff does not have an inherent right

7

to possession or occupancy of the premises. As such, the issues of occupancy may be ripe for resolution, and the issue of damages in the eviction case can be consolidated with the claims for unjust enrichment.

## ORDER

Based on the foregoing, Defendant Quinn McDonagh's Motion for Summary Judgment on behalf of the Defendants is **Granted**. The Court finds that there is no dispute of material fact, and that the evidence demonstrates that Quinn McDonagh, in her capacity as Trustee for the Luellen McDonagh Real Estate Trust is the title owner of record and as a matter of law to the land and improvements located at 1325 Vt. Route 14 in East Montpelier, Vermont. Plaintiff's claim of title is **Denied and Dismissed**. Similarly, Plaintiff's claim to adverse possession is not supported by the evidence taken in a light most favorable to Plaintiff, and Defendants are entitled to judgment as a matter of law. From these conclusions, the Court concludes that Plaintiff Damian Renzello lacks either legal or equitable title to the Property.

Finally, the Court finds that Defendant's implied claim of unjust enrichment survives this summary judgment process and may need some additional discovery before the matter is ready for trial. To that end, the Court will set a status conference. At that conference, the Court shall consider whether Defendants' eviction claim against Plaintiff is ripe for partial adjudication on the issue of possession and whether the damage claims can be joined with the present action for judicial efficiency.

Electronically signed on 1/22/2026 4:46 AM pursuant to V.R.E.F. 9(d)

_____

Daniel Richardson
Superior Court Judge

8